M'GILL, and Others, Plaintiffs in Error, *against* The PRESIDENT, DIRECTORS & COMPANY OF THE BANK OF THE UNITED STATES, Defendants in Error

A. W. M'G. gave a bond to the Bank of the United States, with sureties, conditioned for the faithful performance of the duties of the office of cashier of one of the offices of discount and deposit during the term he should hold that office. The president and directors of the bank having discovered that he had been guilty of

a gross breach of trust, passed a resolution, at Philadelphia, on the 27th of October, 1820 " that A. W. M‘G , cashier, &c. be, and he is hereby suspended from office. till the further pleasure of the board be known:" and another resolution, " that the president of the office at Middletown, be authorized and requested to receive into his care, from A. W. M‘G., the cashier, the cash, bills discounted, books, papers, and other property in said office, and to take such measures for having the duties of cashier discharged, as he may deem expedient." These resolutions were immediately transmitted by mail to the president of the office at Middletown, who received them on the morning of Sunday, the 29th of the same month, but did not communicate them to the cashier, nor carry them into effect, until the afternoon of the 30th, between four and five o'clock : *Held*, that the sureties continued liable for his defaults until that time.

On such a bond, the recovery against the sureties is limited to the penalty.

Partial payments having been made by the sureties, (subject to all questions,) the application of these payments was made by deducting them from the penalty of the bond, and allowing interest on the balance thus resulting, from the commencement of the suit, there having been no previous demand of the penalty, or acknowledgment that the whole was due.

But interest was refused to the sureties on the payments,

THIS cause was argued by Mr. *D. B. Ogden*, for the plaintiff in error, and by Mr. *Webster*, for the defendants in error.

Mr. Justice Johnson delivered the opinion of the Court.

This cause comes up by writ of error from the Circuit Court of the United States, held for the District of Connecticut, in which the defendants here obtained a judgment against the plaintiffs upon a penal bond, in which M‘Gill was principal, the other defendants sureties.

M‘Gill was cashier of one of the branches of the Bank of the United States, and this bond was given in the penal sum of 50,000 dollars, conditioned for the due performance of that office.

The replication sets out a great variety of breaches, and the cause was decided below upon a special verdict, by which was found for the plaintiffs the sum of 66,548 dollars, consisting of a variety of items upon which interest is

charged severally, from the date of the embezzlement or other breach, to the time of finding the verdict.

The verdict then finds two payments, one of 20,000 dollars, made by one of the sureties on the 16th of December, 1820; the other of 500 dollars, made by another of the sureties on the 22d of December, 1820, on which they also calculate interest to the date of the verdict, and deducting the amount of principal and interest, strike a balance of 43,182 dollars 50 cents.

It also finds the following facts: "That the President and Directors of the Bank of the United States, on the 27th of October, 1820, at Philadelphia, passed the following resolution, to wit: " Whereas it appears, by the report of a committee of the office of discount and deposit at Middletown, that Arthur W. M‘Gill, cashier of that office, has been guilty of a gross breach of trust, in knowingly suffering over drafts to be made by individuals; also by making overdrafts himself; therefore, resolved, that A. W. M‘Gill, cashier of the office at Middletown, *be, and he is hereby, suspended from office till the further pleasure of the board be known.*

" On motion, resolved, that the president of the office at Middletown, be authorized and requested to receive into his care, from A. W. M‘Gill, the cashier, the cash, bills discounted, books, papers, and other property in said office, and to take such measures for having the duties of cashier discharged, as he may deem expedient."

Which resolutions were immediately transmitted by mail to the president of the Middletown office, who received them on the morning of Sunday, the 29th of the month, but did not communicate them to M‘Gill until the afternoon of the 30th, between the hours of four and five in the afternoon.

It then finds, that all the breaches were incurred before the 30th, and goes on to find alternatively, so as to enable the Court to give judgment, according to its views of the law, as between the parties. There appear to have been various questions argued in the Court below, some of which were decided for the plaintiff, some for the defendant; but

as the plaintiff below seeks an affirmance of the judgment, and has not sued out a writ of error. it follows, that we confine ourselves to those points only which were decided against the plaintiff here. These were two, one of them going to the whole right to recover, the other to the application of the payments towards the discharge of the sum to be recovered.

Liability of the sureties.

The first of these was, whether the sureties were not discharged *ipso facto* from further liability, by the resolution of the parent bank on the 27th; or if not on that day, then on the 29th, the day on which it was received at Middletown by mail. If discharged on either of those days, it would follow, that the plaintiffs below could not have judgment, since the finding was up to the day following.

We are unanimously and decidedly of opinion, that the ground assumed by the defendants below cannot be maintained. What was there in the resolutions of the parent bank to discharge the obligors at all from their liability? The resolution was only to suspend, and this implies the right to restore. The cashier's salary went on, and had the board rescinded their resolution, what necessity would there have existed for a redelivery of his bond?

But there is no necessity for placing the decision on this ground, since, notwithstanding the resolution of the board is expressed in the present tense, a future operation must necessarily be given it, from a cause that could not be overcome, the distance of the parties from each other. Time became indispensable to giving notice, and the day on which the communication reached the president of the Middletown bank, was a day not to be profaned by the business of a bank. There was, then, no obligation to deliver the notice, and dispossess the cashier, until the 30th, and the law makes no fractions of a day.

Application of the payments.

The Court below, in applying the payments, directed them to be deducted from the penalty of the bond, and then gave interest upon the balance thus resulting. This, with the exception of the interest, was the most favourable application possible for the defendants below; and the interest on the balance having been only allowed from the date of the suit, and the sum thus ascertained falling short of the penalty of the bond.

we think the defendant below has nothing to complain of. It will be discovered, by reference to dates, that the payments here made preceded the institution of the suit, and, although made by the sureties, they were made severally, for any thing that appears to the contrary from the verdict. Technically, then, the judgment to be entered would have been a judgment for the penalty of the bond, and, in applying the partial payment, the Court would have been governed by those principles which have been transferred in practice from the Courts of equity to the Courts of law, in deciding on what terms a party shall be released from the penalty of his bond. These always are, on payment of principal, interest, and costs. And it can constitute no objection to the application of this principle to the case of these obligors, that no interest was allowed them during the short interval between the payment and the suing out of the writ, since the breaches were incurred long before, and interest for the same period is refused to the bank.

1827.

Drummond
v.
Prestman.

Judgment affirmed, with *six per cent.* interest.