GULF STATES STEEL CO. ET AL. *v.* UNITED STATES.

No. 24. Argued October 20, 1932.—Decided November 7, 1932.

Mr. *John W. Drye, Jr.,* with whom *Messrs. John M. Perry* and *Augustus Benners* were on the brief, for petitioners. Mr. *James P. McGovern* also appeared for petitioners.

Mr. *Whitney North Seymour,* with whom *Solicitor General Thacher, Assistant Attorney General Youngquist,*

*Miss Helen R. Carloss,* and *Messrs. Sewall Key* and *Erwin N. Griswold* were on the brief, for the United States.

*Mr. John E. Hughes,* by leave of Court, filed a brief as *amicus curiae.*

MR. JUSTICE McREYNOLDS delivered the opinion of the court.

In the District Court for Alabama—August 25, 1930—the United States sued the Gulf States Steel Company, principal, and National Surety Company, surety,—petitioners here—upon a bond dated September 9, 1925, whereby they agreed to pay Snead, Collector of Internal Revenue, so much of the additional income and profits taxes for 1917 assessed by him against the principal in 1921 " as is not abated." Judgment on a verdict went for plaintiffs; the Circuit Court of Appeals affirmed; the matter is here by certiorari.

Petitioners say the sole question presented is whether the additional taxes were abated by the determination of the Board of Tax Appeals (July 10, 1928) in a proceeding brought by the Steel Company to review the Commissioner's final rejection of its demand for abatement. The Board held " that the respondent is now barred by statute from collecting any part of the additional assessment made in April, 1921, and that there is no deficiency for the year 1917." It directed entry of an order to that effect.

The petition for certiorari asserts: " The sole question in this case is whether the final decision of the Board that there was no deficiency ' abated ' the tax." The following is the only specification of error relied on here—" That the Court erred in holding that the claim for the deficiency of taxes was not abated by the final decision of the United States Board of Tax Appeals that there was no deficiency." And in their brief counsel for petitioners say—" The sole

question in this case is whether the final decision of the Board that there was no deficiency 'abated' the tax."

March 28, 1918, the Steel Company filed its income and excess profits tax return for 1917 and shortly thereafter paid the amount apparently due. In April, 1921, the Commissioner made a deficiency assessment of $153,815.30; May 6, 1921, the Company filed claim and demand for abatement of this entire sum upon the ground that the additional assessment was unwarranted and illegal in so far as it results—(1) From the failure to compute the invested capital by including the actual cash value of claimant's property on January 1, 1914; (2) From the action of the examiners in deducting only 7% of invested capital, instead of 8%; and (3) From disallowance of certain interest payments as part of invested capital.

March 13, 1923, fifteen days before the five-year statute would have barred collection of the deficiency assessment—the additional tax being wholly unpaid and the abatement claim undetermined—in order to secure delay and further consideration of objections, the taxpayer as principal, with the American Surety Company as surety, gave the Collector a bond for $175,350.00 which recites—

"The condition of the above obligation is such that, if the said Gulf States Steel Company will indemnify the said W. E. Snead as Collector as aforesaid, or his successor in office, against all loss, cost, damage, and expense to which he may be put by reason of having allowed the said Gulf States Steel Company to withhold the payment to him, as such Collector, of the sum of One Hundred and Fifty-three Thousand Eight Hundred Fifteen and 30/100 Dollars ($153,815.30), claimed of it under the War Revenue Act of 1917, pending the filing, by the said Gulf States Steel Company of additional facts and information in support of a claim for the abatement of said amount heretofore filed by it, then this obligation to be null and void, otherwise, to be and remain in full force and effect."

April 3, 1925, in order to obtain release of the American Surety Company from the above-described bond, also to

make certain the payment of whatever the Commissioner might thereafter finally declare to be payable under the deficiency assessment of 1921, the Steel Company executed a second obligation and pledged as security Two Hundred Thousand Dollars U. S. Liberty Loan Bonds. This obligation recites—

" Whereas the Gulf States Steel Company did execute a bond in the penal sum of One Hundred Seventy-five Thousand, Three Hundred and Fifty Dollars, ($175,-350.00), and in favor of W. E. Snead, Collector of Internal Revenue, for the District of Alabama, which said bond was signed by the American Surety Company of New York, as surety, under date of the 13th day of March, 1923, and was given in support of a claim for the abatement of assessments, penalties and interests, under the Revenue Act of 1917. Being desirous of relieving the above bound surety Company and further securing the payment of any amount found to be due the United States government under the above Revenue Act, now, therefore, if the undersigned Gulf States Steel Company shall pay to W. E. Snead, Collector, or his successors in office, such amount of the claim as is not abated, together with all costs, damages, penalties, interest, or other expense connected therewith, then this obligation shall be void, otherwise it shall remain in full force and effect."

September 9, 1925, the Steel Company as principal, and National Surety Company as surety, executed the bond in suit, conditioned as follows—

" Whereas, an additional income tax has been assessed for the year 1917 in the sum of One Hundred Fifty-three Thousand Eight Hundred and Fifteen Dollars and Thirty Cents ($153,815.30), with penalty and interest against the Gulf States Steel Company of Birmingham, Alabama. A claim for the abatement of the additional tax was filed with the Collector of Internal Revenue for the District of Alabama at Birmingham. On the third day of April,

1925, the Gulf States Steel Company did execute its bond securing the payment of so much of the additional assessment, penalties and interest as is not abated. In lieu of surety on the above bond the said company did deposit with the Federal Reserve Bank of New York, under Section 1029 of the Revenue Act of 1924, the following described United States, Fourth Liberty Loan 4½% Gold Bonds of 1933–8 series, being of the par value of $200,-000.00 (coupons), numbers . . . The above bonds were deposited on account and subject to the orders of W. E. Snead, Collector of Internal Revenue for the District of Alabama. Now, therefore, if W. E. Snead, Collector of Internal Revenue, shall release and surrender the said bonds to the said Company, and the principal, or sureties, either or both, shall pay to the said Collector so much of the amount of the claim as is not abated, together with penalties and interest thereon as provided by Law, then this obligation shall be of no effect. Otherwise, it shall remain in full force."

May 12, 1926, the Commissioner finally rejected *in toto* the Steel Company's long pending claim for abatement of the additional assessment of 1921 and gave proper notice. This notice among others things stated—" you are allowed 60 days (not counting Sunday as the sixtieth day) from the date of mailing of this letter within which to file a petition with the United States Board of Tax Appeals, Earle Building, Washington, D. C., contesting in whole or in part the correctness of this determination."

By an original petition to the Board of Tax Appeals, July 9, 1926, the Steel Company asked a "redetermination of the deficiency set forth by the respondent [Commissioner] in his notice of deficiency . . . dated May 12, 1926." The prayer follows—

" The petitioner prays for relief from the deficiency asserted by the respondent and from payment of the taxes

assessed in the following and each of the following particulars:

(a) That the petitioner be allowed as a deduction from its gross income for the year 1917, the sum of $47,021.82 as amortization of the cost to it of the lease (or stock) of Clinton Mining Company or as depletion or exhaustion of the leased properties based upon a cost of $145,000.00; or

(b) That the Clinton Mining Company be granted a reasonable allowance for the exhaustion or depletion of the leased properties based upon a March 1, 1913, value of the leasehold, and that amount so allowed be deducted in computing the consolidated net income of the petitioner and Clinton Mining Company for the year 1917:

(c) That the petitioner be allowed $11,000,000.00 in computing its invested capital for 1917, on account of the property paid in for stock on December 1, 1913.

Wherefore petitioner prays that this Board may hear and determine the deficiency herein alleged."

By an amended petition, March 2, 1927, (after *Bowers* v. *New York & Albany Lighterage Co.*, February, 1927, 273 U. S. 346,) the Steel Company renewed its request for " a redetermination of the deficiency set forth by the respondent in his notice of deficiency " dated May 12, 1926.

The petitions are identical except the amended one contains two new paragraphs which allege extinguishment through the Statute of Limitations of all liability of the Steel Company for the additional taxes; also the following new prayer—

"(d) That the Board determine that the liability of the petitioner for the payment of the alleged deficiency has been extinguished by the running of the Statute of Limitations upon its collection and/or that the collection of said alleged deficiency was barred at the expiration of five years after said returns were filed."

The Board of Tax Appeals in July, 1928, held—" None of the bonds in the instant case can be said to constitute a consent in writing by both the Commissioner and the taxpayer to a later determination, assessment and collection of the tax in question, and no other exception to the running of the statute of limitations provided in any of the Acts being present, and no suit or proceeding for the collection of tax having been begun prior to the expiration of five years from the date of filing the return, and the five-year period having expired prior to the passage of the Revenue Act of 1924, we hold that the respondent is now barred by statute from collecting any part of the additional assessment made in April, 1921, and that there is no deficiency for the year 1917. *Bowers* v. *New York & Albany Lighterage Co.,* [273 U. S. 346]; C. B. Shaffer *v.* Commissioner, [12 B. T. A. 298]; *United States* v. *The John Barth Co.* [279 U. S. 370]; Art Metal Works *v.* Commissioner, 9 B. T. A. 491. Our decision in this respect in no wise disposes of any questions arising as to liability on the bond." The consequent formal entry recites—" It is ordered and adjudged that the collection of the deficiency, if any, in income and excess profits taxes for the year 1917 is barred by the statute of Limitations . . ."

*Bowers* v. *New York & Albany Lighterage Co.,* February 21, 1927, 273 U. S. 346, construed the provision, Revenue Act 1921, prohibiting suit or proceeding for the collection of income or excess profits taxes after five years subsequent to the return and held it applied both to suits in court and to distraint proceedings. Prior to this, tax officers went upon the view that the statute of limitations did not apply to distraint.

*United States* v. *John Barth Co.,* 279 U. S. 370, May 13, 1929, ruled that the limitation in Revenue Acts 1918, 1919, 1921 and 1924 upon the time within which income and

excess profits taxes may be assessed and suits begun to collect is inapplicable where the suit is upon a bond given to secure payment of taxes theretofore returned and assessed, in order to obtain postponement of payment pending decision upon claim for abatement; also, that a bond made in such circumstances affords a cause of action separate and distinct from one to collect the tax.

Prior to 1924, in order to contest the Commissioner's assessment, the taxpayer had to pay the sum demanded and bring suit to recover. *Graham* v. *du Pont*, 262 U. S. 234, 258.

Title IX—Board of Tax Appeals—Act June 2, 1924, c. 234, 43 Stat. 253, 336, established the Board of Tax Appeals and authorized it to hear appeals from the Commissioner's action in respect of deficiencies before payments, etc. Under this act if the Board disallowed an alleged deficiency, thereafter the Commissioner could enforce collection only by suit in court.

The Revenue Act, February 26, 1926—Title X; Board of Tax Appeals—c. 27, 44 Stat. 9, 105, 107 amended Title IX—Board of Tax Appeals, Organization and Procedure—Act of 1924, supra, by adding thereto, among other things (under subtitle " Organization and Procedure ") the following wholly new paragraph—" Sec. 906 (e). If the assessment or collection of any tax is barred by any statute of limitations, the decision of the Board to that effect shall, for the purposes of this title and of the Revenue Act of 1926, be considered as its decision that there is no deficiency in respect of such tax." Sec. 274 (a) and (b) of this Act are in the margin.*

---

* " Sec. 274 (a). If in the case of any taxpayer, the Commissioner determines that there is a deficiency in respect of the tax imposed by this title, the Commissioner is authorized to send notice of such deficiency to the taxpayer by registered mail. Within 60 days after such notice is mailed (not counting Sunday as the sixtieth day), the taxpayer may file a petition with the Board of Tax Appeals for a

The Revenue Act, May 29, 1928, " Title IV—Administrative Provisions," 45 Stat. 791, 871, 872, c. 852, amended the above quoted § 906 (e) to read—" If the assessment or collection of any tax is barred by any statute of limitations, the decision of the Board to that effect shall be considered as its decision that there is no deficiency in respect of such tax."

The original Complaint in the present cause alleges that the Steel Company's claim for abatement of the additional assessment for the year 1917 was rejected by the Commissioner May 12, 1926, " for the full amount thereof, whereby there remained unpaid and unabated of the said assessment One Hundred Fifty-three Thousand, Eight Hundred Fifteen Dollars and Thirty Cents ($153,815.30), which said finding and determination of the Commissioner of Internal Revenue rejecting said claim for abatement has remained and now is in full force, vigor and effect, unvacated, unreversed and unmodified and is subject to no credits, set-offs or counterclaims other than here-

redetermination of the deficiency. Except as otherwise provided in subdivision (d) or (f) of this section or in section 279, 282, or 1001, no assessment of a deficiency in respect of the tax imposed by this title and no distraint or proceeding in court for its collection shall be made, begun, or prosecuted until such notice has been mailed to the taxpayer, nor until the expiration of such 60-day period, nor, if a petition has been filed with the Board, until the decision of the Board has become final. Notwithstanding the provisions of section 3224 of the Revised Statutes the making of such assessment or the beginning of such proceeding or distraint during the time such prohibition is in force may be enjoined by a proceeding in the proper court.

" (b). If the taxpayer files a petition with the Board, the entire amount redetermined as the deficiency by the decision of the Board which has become final shall be assessed and shall be paid upon notice and demand from the collector. No part of the amount determined as a deficiency by the Commissioner but disallowed as such by the decision of the Board which has become final shall be assessed or be collected by distraint or by proceeding in court with or without assessment."

inafter set forth." Petitioners denied this allegation. They maintained that the Commissioner's action had been reversed and the additional taxes abated by the opinion and ruling of the Board of Tax Appeals and this seems to have been the only point relied upon in the Circuit Court of Appeals which rejected petitioners' theory and approved the challenged judgment on the bond.

Concerning the Board's action that court said [p. 45]—
" This is not a finding that the tax or any part of it should be abated. It does not abate any part of it. It is but a formal judgment that the tax, as tax, is, because the bar of limitation has fallen, not collectible. Since it is this and no more, it has the effect upon the suit on the bond here, and no more, that the fact found in the Barth case and the legal conclusion there announced, that time had run against the tax and that it was therefore uncollectible, had on the suit on the bond there."

The bond in suit must be construed in the light of surrounding circumstances. *Hill* v. *American Surety Co.*, 200 U. S. 197, 203, 204, 205. They are narrated above.

As in *United States* v. *Barth Co., supra,* the plain purpose of the first bond—March 13, 1923—was to prevent immediate collection of the assessed additional taxes and to provide against any loss which might follow delay whether through extinguishment of rights under the Statute of Limitations or otherwise. We think it sufficiently clear that the two succeeding bonds were intended to continue the protection afforded by the first. The taxpayer, having attained its purpose through these bonds, now claims that the United States cannot enforce the obligation which induced the delay contemplated by all parties. It seeks escape through literal construction of a statute evidently designed to protect taxpayers in different circumstances.

Considering the state of the record, it is only necessary now to pass on one point—Were " the additional assessments, penalties and interest " " abated " by the Board of

Tax Appeals' final determination, within the meaning of the bond in suit. Unless this is answered in the affirmative, the judgment below must stand. There is no suggestion that it should be upset upon any other ground.

Petitioners maintain that the Board had jurisdiction of the appeal from the Commissioner; that it definitely ruled " the collection of the deficiency, if any, of income and excess profits taxes for the year 1917 is barred by the Statute of Limitations " and that the necessary result of this ruling was abatement of the additional assessments, mentioned in the 1925 bond. This conclusion, they say, is inescapable under the clear mandate of § 906 (e), Revenue Act of 1924, as amended by the Acts of 1926 and 1928— " If the assessment or collection of any tax is barred by any Statute of Limitations the decision of the Board to that effect shall be considered as its decision that there is no deficiency in respect of such tax."

As the provisions of § 906 (e) first came into the law after execution of the bond, they could not then have been within contemplation of the parties. The bond of 1925, like the two preceding ones, was given to protect the United States against loss; it referred to the tax liability existing March 13, 1923,—$153,815.30—and was intended to guarantee payment of that sum unless reduced or annulled by some future action of the Commissioner. Payment might have been enforced; but the taxpayer claimed the amount assessed was too high and procured further delay for investigation by executing the bond. The possible abatement—partial reduction or annulment—there referred to depended upon the future decision of the Commissioner.

On appeal to the Board the taxpayer challenged the assessment as erroneous; also, because under the Statute of Limitations there remained no right to enforce the tax. As to the first ground, the Board found nothing. It declared only that the Statute had run against the right to collect the tax—this upon the taxpayer's prayer. In no

proper sense was there a redetermination of the deficiency assessed in 1923. The anticipated bar of the tax by the Statute could not affect the controversy—was not the point in issue, was not disputed. The bond required payment of a stated sum under the assessment already made, unless this should be abated by the Commissioner. What abatement should be allowed was the matter before him and a reëxamination of his determination was necessarily limited to those matters which might have been presented to him. By the prayer based on the statute of limitations the taxpayer defeated a determination of the real controversy.

In the circumstances, possibly, a decision upon the merits might have been regarded as the Commissioner's action within the implication of the bond. The effective scope of the decision rendered is no broader than the issue, opinion and findings. It left undisturbed the Commissioner's assessment of 1923. This the bond undertook to pay wholly without regard to the right to enforce the tax as such.

The existence of the bar under the Statute, as against the lien or right to enforce the tax as such, was never the subject of controversy—was not denied. And as the present suit is not to enforce the tax as such, but an obligation given in contemplation of the loss of right to enforce, a decision proclaiming this loss is but announcement of something expected by all parties—an unfruitful pronouncement upon an immaterial point. *United States* v. *Barth Co., supra.* See *United States* v. *Martin Hotel Co.,* 59 F. (2d) 549. As the Board failed to pass upon the Commissioner's refusal to reduce the amount of the assessment, that sum, with interest, etc., now represents what is due upon the bond. The Board expressly disclaimed purpose to rule concerning this obligation—the question was not present. It might, with propriety, have examined the objections to the amount of the 1923 assessment; but the taxpayer asked another course.

Section 906 (e) may find proper application on an ordinary appeal, as for example, where the Commissioner's right to assess is challenged because the Statute of Limitations had run, or where, as in *Bowers* v. *New York & Albany Lighterage Co.*, *supra*, the Collector asserts the right to enforce payment by distraint after the statutory bar. It can have no application to what may have been said or done by the Board when undertaking to redetermine a deficiency having no possible relation to the Statute of Limitations.

The literal construction of § 906 (e) proposed by the petitioners would lead to consequences manifestly unjust, if not absurd. When the bond in suit was executed the Statute had extinguished the right of the United States to enforce the tax as such. That Congress thereafter actually intended to release the parties whenever the Board should declare this fact is beyond belief. The thing announced by the Board had no real relation to the obligation of the bond. When possible, every statute should be rationally interpreted with the view of carrying out the legislative intent. We cannot attribute to Congress the purpose necessary to support petitioners' urgence.

*Affirmed.*