## MARYLAND CASUALTY CO. v. UNITED STATES.

### No. 7602.

Circuit Court of Appeals, Fifth Circuit.

March 23, 1935.

H. Reid De Jarnett, of Miami, Fla., for appellant.

Frank J. Wideman, Asst. Atty. Gen., John MacC. Hudson, Sp. Asst. to Atty. Gen.; John W. Holland, U. S. Atty., and Raymond F. Brown, Sp. Asst. to U. S. Atty., both of Jacksonville, Fla., and Rene A. Viosca, U. S. Atty., of New Orleans, La.

Before BRYAN, SIBLEY, and HUTCHESON, Circuit Judges.

SIBLEY, Circuit Judge.

The United States in a common-law action sued Maryland Casualty Company as surety on a bond for $4,000 conditioned for the payment of income taxes due by Robert C. Lindsay. A plea of res judicata was stricken and judgment entered for a principal sum of $5,689.51, being the taxes with interest at 1 per cent. per month since they were first demanded of the taxpayer in September, 1926, with interest from date of judgment at 8 per cent. The appeal assigns error in striking the plea and in entering judgment for more than the penalty of the bond. The facts set up by the declaration and not denied by the plea are that Lindsay owed $2,707.85 as income taxes for the year 1925, and $300.44 as additional taxes for the year 1920, payment of which was demanded by the Commissioner in September, 1926; that in consideration of delay to enforce these taxes until May 26, 1928, or to place a lien on Lindsay's property until abatement of the tax should be decided, Lindsay on May 26, 1927, gave the bond sued on with Maryland Casualty Company as surety; that a claim for abatement of the 1925 tax was filed and the tax reduced by $85.65 on May 23, 1928; that on June 1, 1928, Lindsay was notified of this result but did not pay, and on January 30, 1929, Maryland Casualty Company was notified of Lindsay's default and payment demanded from it; and that on May 15, 1928, Lindsay had been adjudicated a bankrupt. The plea set up that in the bankruptcy case the collector of internal revenue filed a claim for these taxes, and on objection by the trustee the referee on January 28, 1929, disallowed the 1925 taxes and allowed only those for 1920. No review being had, the referee's ruling is pleaded as conclusively showing that Lindsay did not owe the 1925 taxes.

Assuming, without deciding, that the referee's decision would bind the United States otherwise than in the distribution of the bankrupt's estate, it was no answer to a

suit on this bond. The bond recites that there are due from Lindsay "certain additional income or profits taxes resulting from a deficiency in tax, and to exact payment of the deficiency in tax at this time will result in undue hardship," and it refers to a statutory authority in such cases to extend the time of payment on giving bond, and states that the Internal Revenue Department will "refrain from placing a lien on Lindsay's property until the matter in abatement shall be decided." The bond is to pay $4,000 on this condition, "If the principal shall on or before the 26th day of May, 1928, pay such deficiency in tax found to be due by the Commissioner plus penalty and interest, in accordance with the terms of the extension as herein stated, and shall otherwise well and truly perform and observe all the provisions of law and the regulations" the obligation is to be void. The bond appears to be on a form appropriate to the delay of deficiency assessments under section 274 (g) of the Revenue Act of 1924, and section 274 (k) of the Revenue Act of 1926 (26 USCA § 1054 and note). But a blank in the bond as to the statute referred to as authority stands unfilled, and it is argued that the tax for 1925 was not a technical deficiency assessment such as is referred to in the cited statutes. Possibly the recital in the bond that the taxes due are deficiencies is an estoppel. But if the bond be not one under the statute, it is good as a common-law obligation against its signers, who had the full benefit of it and who need no statute to enable them to contract. We have only to construe it. Lindsay stood faced by assessments securable by recording a lien and enforceable at once by distress, he not having sought relief through the Board of Tax Appeals. He had under the law to pay, though he might after paying seek refund of anything he did not owe. See Graham v. Du Pont, 262 U. S. 234, 43 S. Ct. 567, 67 L. Ed. 965. The bond means that the Internal Revenue Department will refrain from recording a lien against Lindsay's property till a claim in abatement be made by him is decided and will defer collection until May 26, 1928, when Lindsay is to pay all unabated taxes with penalty and interest; and if he fails to do so the $4,000 promised by the bond is to be paid, or so much of it as equals the amount due by the taxpayer. The bond says that Lindsay is to pay not such taxes as he may legally owe, but "such deficiency in the tax found due by the Commissioner." The object of the bond was to assure prompt payment on

May 26, 1928, of the taxes claimed by the Commissioner; not then to start a lawsuit about them. It has often been held that such a bond made to get time to pay an assessed tax, whether or not it is strictly authorized by statute, must be paid according to its terms after the delay has been enjoyed. United States v. John Barth Co., 279 U. S. 370, 49 S. Ct. 366, 73 L. Ed. 743; Gulf States Steel Co. v. United States, 287 U. S. 32, 53 S. Ct. 69, 77 L. Ed. 150; Gray Motor Co. v. United States (C. C. A.) 16 F.(2d) 367; Bowers, Collector v. American Surety Co. (C. C. A.) 30 F.(2d) 244; United States v. Wyoming Central Ass'n (C. C. A.) 70 F.(2d) 869. According to these cases, the present suit is not one to collect taxes, but to enforce the covenant of the bond. Whether after paying the bond the surety may be so subrogated to the taxpayer's rights as to be entitled to ask refund of any unlawful exaction is not a question before us.

Judgment should have gone against the surety, but not for the taxes with 1 per cent. per month interest to the date of judgment, nor for a principal amount in excess of the penalty of the bond. The suit is technically not one for taxes. The surety has not promised to pay them, but to pay $4,000 if Lindsay did not on May 26, 1928, pay his taxes. The penalty in a bond like this is no longer a forfeited "pound of flesh," but the law follows equity in treating it as a security for the performance of the condition and will exact only enough of it to recompense the obligee for the breach of the condition. If that recompense exceeds the fixed penalty the obligee cannot recover the excess against the surety. Whether, when the whole penalty is exhausted, it may itself bear interest has been differently decided. But the rule established by the Supreme Court is that "Sureties, if answerable at all for interest beyond the amount of the penalty of the bond given by their principal, can only be held for such an amount as accrued from their own default in unjustly withholding payment after being notified of the default of the principal." United States v. U. S. Fidelity & Guaranty Co., 236 U. S. 512, 513, 35 S. Ct. 298, 304, 59 L. Ed. 696. See, also, McGill v. Bank of United States, 12 Wheat. 511, 6 L. Ed. 711; Farrar v. United States, 5 Pet. 373, 8 L. Ed. 159; United States v. Hills, Fed. Cas. No. 15,369; United States v. Meeker, Fed. Cas. No. 15,757. Compare Illinois Surety Co. v. John Davis Co., 244 U. S. 376, 377,

37 S. Ct. 614, 61 L. Ed. 1206. So soon as Lindsay on May 26, 1928, failed to pay the taxes and interest claimed by the Commissioner, the bond was forfeited and demand might have been made under it for the amount thus due not exceeding the penalty. Thereafter, this demand under the bond bore interest at the legal rate, till the amount of the penalty was reached, but no interest in excess of the penalty can be claimed against the surety until after the notice to it on January 30, 1929, and then only at the legal rate instead of the tax rate. The judgment is reversed and the cause remanded, with direction to enter judgment accordingly.