**In re HOTEL CHARLES CO.**

No. 57607.

District Court, D. Massachusetts.

Nov. 5, 1935.

See, also, 12 F.Supp. 19.

Donald M. Macauley, of Springfield, Mass., for City of Springfield.

McClintock, Hoar & Houlihan, of Springfield, Mass., for Hotel Charles Co.

BREWSTER, District Judge.

In proceedings brought by the Hotel Charles Company for reorganization under section 77B, Bankr. Act (11 USCA § 207), questions are presented respecting the powers of the court to deal with the situation arising upon the following state of facts:

The debtor owned a hotel building in Springfield, Mass. In 1931 the assessors of the city of Springfield, after allowing an abatement, assessed the property for $742,-000. The taxes for that year were not paid, and, on August 24, 1932, the property was sold for taxes and bought in by the city for the sum of $22,705.86. The real estate taxes for the intervening years, 1932 to 1934, inclusive, have not been paid, and on August 1, 1935, the amount of unpaid taxes, together with interest and costs, aggregated $103,676.15. According to the most recent determination of the assessors, the property is assessed for $721,100.

Within the time fixed by the order of court, the city of Springfield filed with the trustees its claim for the unpaid taxes, with interest and costs. To this claim the debtor objected, and the claim of the city with other disputed claims were referred to the referee as special master, to take evidence and report. After hearings had begun, the city filed a petition to intervene in the proceedings for the purpose of filing a plea in bar to the jurisdiction of the court, a motion for particulars, and an answer to the allegations of the debtor's pleadings so far as they related to the taxes due the city of Springfield.

I granted the motion for particulars, somewhat modified. In response the debtor has filed particulars, setting forth six

grounds upon which it claims that the taxes are invalid.

Three of these grounds relate to alleged insufficient, inaccurate, and improper description of the property; the fourth ground attacks the validity of the charges and expenses that have been added to the taxes; the fifth ground attacks the validity of the tax deed to the city of Springfield; and the sixth ground is that the valuations of the property for the years in question were not in accordance with the statutes of the commonwealth of Massachusetts.

No order of liquidation has been entered in these proceedings.

I have heard arguments and given careful consideration to briefs filed by both the debtor and the city of Springfield and a brief submitted by the law department of the city of Boston, appearing as amicus curiæ.

I have never doubted, and do not now question, the power of this court to refer to a special master this controversy or any controversy arising under section 77B. This authority is expressly conferred upon the court by section 77B (c) (11) of the act, 11 USCA § 207 (c) (11).

Nevertheless, it has seemed advisable to halt the proceedings before the master until ample consideration could be given to the contentions of the city respecting the powers of the court under section 77B to determine the validity and amount of the taxes. It would seem a needless expenditure of time and money to go into an extended inquiry into the regularity of the assessments and the valuation of debtor's real estate upon which the tax was assessed if, in the end, the court should be obliged to rule that it had no jurisdiction in the premises, as the city contends.

The city contends that this court is without jurisdiction to hear and determine the amount and validity of the taxes assessed by the city of Springfield under section 77B of the Bankruptcy Act, unless and until an order of liquidation has been entered. This contention is based upon the proposition that section 77B (k) of the act, 11 USCA § 207(k), expressly renders inapplicable the provisions of section 64 (a) of the Bankruptcy Act, 11 USCA § 104(a), in which there is a provision that in case any question "arises as to the amount or legality of any such tax [including municipal tax] the same shall be heard and determined by the court."

Section 77B (k) provides for the application of certain provisions of the Bankruptcy Act in the event the court has directed the trustee to liquidate the estate. Among the provisions of the Bankruptcy Act, made applicable in such case, is the provision that debts shall be entitled to priority as provided in section 64 (11 USCA § 104). Subparagraph (k), § 77B, then provides that none of the sections (with certain immaterial exceptions) enumerated in this subdivision (k) shall apply to proceedings instituted under section 77B unless and until an order has been entered directing the trustee to liquidate the estate.

If none of the provisions of section 64 have any application to these proceedings, then the court is deprived of whatever authority may have been conferred by that section to hear and determine controversies over taxes. The debtor argues with considerable force and ingenuity that it was never the intention of Congress to declare the whole of section 64 inapplicable, but only that part of section 64 which deals with priority of claims.

■ It is not difficult to believe that Congress did not intend to weaken the powers of the court to inquire into the legality of claims asserted against a debtor who is seeking reorganization under section 77B. If the language employed in subparagraph (k) were ambiguous, the court would be at liberty to interpret the language so as to carry out the obvious intention of the Legislature, Gulf States Steel Co. v. United States, 287 U.S. 32, 53 S.Ct. 69, 77 L.Ed. 150; Russell Motor Car Co. v. United States, 261 U.S. 514, 43 S.Ct. 428, 67 L.Ed. 778; but, where the language is susceptible of only one construction, there can be no justification for departing from the literal meaning of the words. The clause clearly specifies sections of the Bankruptcy Act that shall have no application to proceedings under section 77B. Section 64, without any reservation whatsoever, is one of these sections. The court cannot rewrite the statute or incorporate by reference sections of the Bankruptcy Act which Congress has said shall be inapplicable, Russell Motor Car Co. v. United States, supra; Commissioner of Immigration v. Gottlieb, 265 U.S. 310, 44 S.Ct. 528, 68 L.Ed. 1031; Michigan v. Michigan Trust Co., Receiver, 286 U.S. 334, 52 S.Ct. 512, 76 L.Ed. 1136; United States v. Missouri Pac. R. Co., 278 U.S. 269, 49 S. Ct. 133, 73 L.Ed. 322; Lang v. Commissioner of Internal Revenue, 289 U.S. 109, 53 S. Ct. 534, 77 L.Ed. 1066; Reinecke v. Smith, 289 U.S. 172, 174, 53 S.Ct. 570, 77 L.Ed. 1109; Lansdown v. Faris (C.C.A.) 66 F.

(2d) 939; Pitcairn v. Fisher (C.C.A.) 78 F.(2d) 649.

The conclusion which I have reached respecting the applicability of section 64 renders it unnecessary to consider the arguments of counsel relative to the effect of the amendment limiting the provable tax to that assessed upon the value of the bankrupt's interest in the real estate.

The question of jurisdiction, however, or of the powers of the court, does not rest upon section 64 (a) if such powers are necessary to an effectual administration of the law. Implied powers have been found to reside in the Bankruptcy Act of 1898; thus, that act contains no express provision for the sale of a bankrupt's property free from liens, or the transfer of the lien to the proceeds of the sale, yet it has been held that the power was granted by implication, and this in a case involving lien for state taxes. Van Huffel v. Harkelrode, Treasurer, 284 U.S. 225, 52 S.Ct. 115, 116, 76 L.Ed. 256, 78 A.L.R. 453.

In that case the court, speaking through Mr. Justice Brandeis, said: "Realization upon the lien created by the state law must yield to the requirements of bankruptcy administration."

It may well be that we must look to section 77B for these implied powers. The statute expressly confers upon the court exclusive jurisdiction over the debtor's property wherever located, and all the powers not inconsistent with this section which a federal court would have, had it appointed a receiver in equity of the property of the debtor. Section 77B (a), Bankr. Act, 11 USCA § 207 (a).

It is also provided that, in proceedings under section 77B, and consistent with the provisions thereof, the court shall have the jurisdiction and powers of a court of bankruptcy. Section 77B (o) of the act, 11 USCA § 207 (o).

If any creditor claims a lien upon the property affected by the plan of reorganization and he does not belong to a class of duly assenting creditors, the plan cannot be confirmed unless it provides adequate protection for the realization by the creditor of the value of his interest or lien in or upon the property.

The principal asset of the Hotel Charles is the right to redeem real estate from a tax sale. This is a property right within the exclusive jurisdiction of the court. In re Argyle-Lake Shore Bldg. Corporation (C. C.A.) 78 F.(2d) 491, 494. The statutes of Massachusetts provide that after sale the purchaser shall hold title as "security for the repayment of the purchase price, with all intervening costs, terms imposed for redemption and charges, with interest thereon." G. L. Mass. (Ter. Ed.) c. 60, § 45.

Whether we approach the matter from the viewpoint of the debtor, as an owner of a right to redeem, or from the viewpoint of the city as a creditor with a lien upon the real estate, we reach the same ultimate result. In order to determine the extent and value of the right or the extent of the incumbrance, there must be inherent in the court authority to test the validity and quantity of the right of or the lien.

So long as the city officials hold to their present attitude, it is not to be expected that any plan can be formulated that does not first provide for the redemption of the property. When a controversy exists over what may be required in order to exercise that right, it would be a most extraordinary situation if there were no power in the court to determine the validity of the claim asserted by the city. It cannot be that, however arbitrarily and unlawfully the taxing authorities may have proceeded in fixing the tax, the costs, or the rate of interest, the court is powerless to prevent an illegal exaction and thereby do full justice to the other creditors of the corporation.

Again, it is inconceivable that a court, charged with the duty of protecting interests, or liens, upon the property of the debtor, is bereft of all power to pass upon the legality of the claim, or the extent of the lien asserted upon the property.

I am therefore convinced that the provisions of section 77B by necessary implication confer upon this court authority to inquire into the validity of a claim or a lien and to determine what provisions must be made to adequately protect the interests or liens of those who do not assent to the plan.

It is the contention of the municipality that to thus construe the statute is to render it unconstitutional. I am prepared to concede the soundness of the proposition that the levying of municipal taxes is the function of a subordinate governmental instrumentality of the state, and that the federal courts have no power to assess or apportion the tax or to direct the municipal officers to make another assessment or apportionment. This proposition is abundantly supported by authorities. State Railroad Tax Cases, 92 U.S. 575, 23 L.Ed. 663; Heine v.

Board of Levee Commissioners, 19 Wall. 655, 660, 22 L.Ed. 223.

The reason that the proposition is not controlling is because it is not applicable to the case at bar. As was said by Judge Morton in Re E. C. Fisher Corporation (D. C.) 229 F. 316, 318: "This court is not undertaking to revise the tax commissioner's action on the evidence before him; it is endeavoring to ascertain for what amount the tax claimed ought to be allowed as a preferred claim."

The court is not derogating from the rights of the city when it is adjudicating the validity of its claim. It is not taking its property without due process of law. On the contrary, according to due process of law, it is determining that the city shall exact no more than it is lawfully entitled to under the laws of the state upon which its acts are predicated.

That section 77B is a valid exercise of the granted powers of Congress to "establish * * * uniform Laws on the subject of Bankruptcies throughout the United States" (Const. art. 1, § 8, cl. 4) seems to be the unanimous view of those courts that have had to deal with the question. In re Central Funding Corporation (C.C.A.) 75 F.(2d) 256; Campbell v. Alleghany Corporation (C.C.A.) 75 F.(2d) 947; Grand Boulevard Inv. Co. v. Strauss (C.C.A.) 78 F.(2d) 180; In re New Rochelle Coal & Lumber Co. (C.C.A.) 77 F.(2d) 881. Compare Continental Illinois Nat. Bank & Trust Co. v. Chicago, R. I. & P. Ry. Co., 294 U. S. 648, 55 S.Ct. 595, 79 L.Ed. 1110; In re Landquist (C.C.A.) 70 F.(2d) 929; In re O'Brien (C.C.A.) 78 F.(2d) 715.

The arguments of the learned counsel, to the effect that the federal government has no right to interfere with the levying or collecting of taxes by a state or political subdivision thereof, are not relevant to the question presented. While there are cases holding that a federal court cannot interfere with the collection of a state tax, this rule has never been thought to preclude a court in bankruptcy from enjoining such collection or levy when the interest of the bankrupt estate demanded it. In re Argyle-Lake Shore Bldg. Corporation, supra; In re Munson (D.C.) 11 F.Supp. 564. Compare In re Associated Gas & Electric Co. (D.C.) 11 F.Supp. 359; In re Bush Terminal Co. (C. C.A.) 78 F.(2d) 662. In the Argyle Case the court said: "We do not regard the injunction as an unlawful interference with the county or state in the collection of their taxes. Its effect was to protect the jurisdiction of the District Court over the bankrupt's right of redemption, which was an asset of the estate, in order that equity might be done to all interested parties."

I have already ruled in this case that the court may enjoin the city from proceeding in the land court to bar the right of redemption. In re Hotel Charles Co. (D.C.) 12 F.Supp. 19.

In the recent case of Rowley v. Chicago & Northwestern Ry. Co., 293 U.S. 102, 55 S.Ct. 55, 59, 79 L.Ed. 222, the federal court reduced the valuation, for the purpose of taxation, of the railroad property fixed by duly constituted state authorities. The action of the lower court was reversed on the ground that the finding of the District Court on the evidence did not warrant the conclusion that the state board was arbitrary, unreasonable, or erroneous in its valuation. It was there said, however, that "overvaluation resulting from error of judgment will not support a claim of discrimination. There must be something that amounts to an intention, or the equivalent of fraudulent purpose, to disregard the fundamental principle of uniformity."

While the court suggests that it is no part "of the judicial function to determine the base or amount of the tax that in its view might be legally exacted as a result of the assessment in question," it does not, in my opinion, follow that the action of a local board of assessors is so conclusive or sacrosanct that its validity may not appropriately be the subject of controversy and adjudication in a federal court, sitting in bankruptcy and exercising the authority conferred by section 77B. Van Huffel v. Harkelrode, supra.

The debtor has objected to the claim of the city, attacking the regularity of the assessment, the validity of the tax deed, and the valuation. I cannot assume that these objections are made in bad faith. The issues raised must be considered by the court and, as I have already indicated, the court is amply provided with authority to refer the controversy to a special master for his report.

It is not to be taken from the foregoing that the court now intimates that the claim asserted by the city is illegal in any respect. In this opinion I am simply passing upon the city's plea to the jurisdiction and ruling that the court has jurisdiction to determine the controversy which has arisen between the city and the debtor over these

738

taxes. If it should be found that, under the laws of Massachusetts, the tax was valid, the claim and the lien will be upheld in this court, and any plan of reorganization must contain adequate provisions for the protection of the City's interest.

The specifications of objections to the claim of the city are couched in somewhat general language, and, before ordering the master to proceed, I feel that those making the objections should first show some substantial basis for them which is likely to necessitate an extended inquiry into the facts. So far as the objection is based upon the valuation of the real estate, it will be necessary to satisfy me that the debtor has some evidence that the valuation was so far in excess of the true value as to render the action of the local board an arbitrary and unreasonable disregard of the "fundamental principle of uniformity."

I will set this matter down for hearing before me at Springfield on Monday, December 16, 1935, at 11 o'clock a. m., in order that parties may be heard in the light of the above upon the propriety of resuming the hearings before the special master.