EDMONDS, J.
 

 The appellant in this ease pleaded guilty to an indictment charging him with the crime of murder committed on May 12, 1937. Upon taking evidence concerning the circumstances of its commission, the court found it to be murder in the first degree without mitigating circumstances and judgment was imposed that the defendant suffer the penalty of death by being hanged. Upon appeal the defendant contends that at the time he committed the crime the statute prescribing hanging as the punishment for murder had been repealed and a new statute providing for execution by gas had not yet gone into effect. Consequently, so he claims, there is no method by which he may legally be executed.
 

 For many years prior to 1937 the law of California has specified death as a punishment for murder (see. 190, Pen. Code) and required that it “be inflicted by hanging the defendant by the neck until he is dead”. (Sec. 1228, Pen. Code.) The legislature of 1937 enacted the following:
 

 “Section 1. Section 1228 of the Penal Code is hereby amended to read as follows: 1228. The punishment of death shall be inflicted by the administration of a lethal gas. See. 2. This act shall not apply to any punishment of death imposed for any crime committed prior to its effective date.” This act was approved by the Governor May 5, 1937, and became effective August 27, 1937. (Const., art. IV, sec. 1;
 
 *88
 
 sec. 323, Pol. Code.) The appellant argues that the legislature by the use of the word “hereby" intended to repeal the then existing law as of the date of the enactment of the new statute. Plowever, such a construction is supported by neither reason nor authority.
 

 It has been uniformly held in this state that a statute has no force whatever until it goes into effect pursuant to the law relating to legislative enactments. It speaks from the date it takes effect and not before. Until that time it is not a law and has no force for any purpose.
 
 (Santa Cruz Water co.
 
 v.
 
 Kron,
 
 74 Cal. 222, 223 [15 Pac. 772];
 
 Harrison
 
 v.
 
 Colgan,
 
 148 Cal. 76 [82 Pac. 674];
 
 Gilmore
 
 v.
 
 Pearson,
 
 71 Cal. App. 284 [235 Pac. 665].) So where the legislature passes an act to amend a statute then existing, the latter remains in full force during the time between the passage of the amendatory act and the time when it becomes effective. (23 Cal. Jur. 623.) Mr. Bishop applies this general rule to statutes concerning crimes as follows: “A statute which is to become law at a future day is a nullity in the meantime. It does not even operate as notice to persons to be affected by it, nor does a repealing clause in it put an end to the law to be repealed.” (Bishop on Statutory Crimes, sec. 31.)
 

 These conclusions are both logical and reasonable. It cannot be supposed that the legislature in amending a statute for the purpose of substituting one form of punishment for another desired the existing law to be repealed as of the date of the passage of a new law which would not become effective for several months thereafter. The use of the word “hereby” does not impel this conclusion. This word means only that by passing the act in question the legislature decided to change the method of inflicting the death penalty. It does not indicate any intention to repeal the statute then in force before the effective date of the new enactment, assuming that this could be done. Moreover, the legislature expressly provided that the new law “shall not apply to any crime committed prior to its effective date”, which implies recognition of the rule that a statute is construed as if passed on the day it takes effect. For every statute speaks as though the legislature was in session on the day when the act takes effect and passed it on that day.
 
 (Gilmore
 
 v.
 
 Pearson, supra.)
 
 The provision of the Penal Code prescribing hanging as the method of inflicting the
 
 *89
 
 death penalty was, therefore, in full force and effect at the time of the commission of the crime with which the defendant was charged and also when sentence was imposed upon him.
 

 The defendant also urges that this court should modify the judgment by determining the crime committed by him to have been murder in the second degree because the facts presented to the lower court show that on account of his mental condition at the time of the homicide he was incapable of committing the crime of murder in, the first degree. While the evidence shows that the defendant’s wife had left him three or four days before he committed the homicide and according to him he had been “doing a lot of worrying”, he stated in open court that he did not want to enter either a plea of not guilty to the charge or a plea of not guilty by reason of insanity. The trial judge after hearing the defendant’s story of how he accomplished the crime, stated that he had no doubt the defendant was perfectly sane both at that time and the time the offense was committed. All of the evidence points unmistakably to this conclusion. The defendant in the middle of the night and upon the representation that his wife was ill, lured to his home a nurse whom he had never seen before and murdered her for the sole purpose of ravishment. He planned the crime with considerable ingenuity and executed it in a manner too gruesome to detail.
 

 The judgment is affirmed.
 

 Waste, C. J., Shenk, J., Curtis, J., Seawell, J., and Nourse, J.,
 
 pro tern.,
 
 concurred.