In the Matter of the Application of Pietro Biagio RAIMONDI for a Writ of Habeas Corpus.

Civ. No. 34114.

United States District Court
N. D. California, S. D.

Nov. 5, 1954.

lawfully admitted to the United States for permanent residence. On December 1, 1952, a judgment and sentence of two years was entered against petitioner upon conviction of a charge of violating 21 U.S.C.A. § 174 (a narcotics violation), before the United States District Court for the Northern District of California, Southern Division. The two year sentence has been served, but respondent now detains petitioner by virtue of a warrant of arrest for his deportation dated July 14, 1953, and respondent intends to deport petitioner pursuant to an order of a special inquiry officer dated December 9, 1953.

Petitioner attacks the order of deportation on two grounds: first, that the deportation proceedings should have been brought under the Act of June 28, 1940, and therefore the proceedings brought under the Act of June 27, 1952, 8 U.S. C.A. § 1101 et seq., are void; and second, that petitioner was denied procedural due process because he was not represented by counsel at the hearing before the special inquiry officer, and because his request to change the place of hearing was denied.

In support of his first contention petitioner argues that the acts that rendered him subject to deportation, that is, his conviction of a narcotics violation, occurred before the effective date of the Act of June 27, 1952, and therefore the deportation proceedings could not properly be brought under the Act of June 27, 1952, because the savings clause of that Act, Section 405, 8 U.S.C.A. § 1101 note, preserved his status of deportability under the Act of June 28, 1940. The pertinent part of the savings clause reads:

Gladstein, Andersen & Leonard, San Francisco, Cal., for petitioner.

Lloyd H. Burke, U. S. Atty., Charles Elmer Collett, Asst. U. S. Atty., San Francisco, Cal., for respondent.

OLIVER J. CARTER, District Judge.

Pietro Biagio Raimondi has petitioned this Court for a writ of habeas corpus. His petition is based upon the following facts: Petitioner is an alien who was

"(a) Nothing contained in this Act, unless otherwise specifically provided therein, shall be construed to affect * * * any status, condition, right in process of acquisition, act, thing, liability, obligation, or matter, civil or criminal, done or existing, at the time this Act shall take effect * * *."

Petitioner's first contention is also based upon his construction of certain portions of 8 U.S.C.A. § 1251, which sets forth the general classes of deportable aliens. Petitioner comes within Section 1251(a)(11), because he is an alien in the United States who has been convicted of a violation of a law relating to the illicit traffic in narcotic drugs. That section provides:

"(a) Any alien in the United States (including an alien crewman) shall, upon the order of the Attorney General, be deported who—

\* \* \* \* \* \*

"(11) is, or hereafter at any time after entry has been, a narcotic drug addict, or who at any time has been convicted of a violation of any law or regulation relating to the illicit traffic in narcotic drugs, or who has been convicted of a violation of any law or regulation governing or controlling the taxing, manufacture, production \* \* \* of \* \* \* any addiction-forming or addiction-sustaining opiate \* \* \*."

■ But petitioner urges that Section 1251(d) should be construed to mean that Section 1251 is not to be applied to acts occurring between June 27, 1952, and December 24, 1952. Section 1251(d) is entitled "Applicability to all aliens" and reads as follows in the Act of June 27, 1952, as Section 241 of that Act:

"(d) Except as otherwise specifically provided in this section, the provisions of this section shall be applicable to all aliens belonging to any of the classes enumerated in subsection (a) of this section, notwithstanding (1) that any such alien entered the United States prior to the date of the enactment of this Act, or (2) that the facts, by reason of which any such alien belongs to any of the classes enumerated in subsection (a), occurred prior to the date of enactment of this Act."

It is true that a literal construction of the phrase "date of enactment" would lead to the conclusion that June 27, 1952, was the date referred to; but such a literal construction also leads to the strange and unlikely conclusion that Congress intended Section 1251 to apply to acts that occurred before June 27, 1952, and to acts that would occur after the effective date of the Act, December 24, 1952, but not to acts that occurred during the six month period between June 27, 1952, and December 24, 1952. Petitioner has not suggested any possible reason for a Congressional intent to exempt that six month period from the operation of the Act of June 27, 1952, and this Court has not discovered one in the history of the Act or in the circumstances surrounding its enactment. On the contrary this Court concludes that the intention of Congress was that the Act of June 27, 1952, should apply to acts occurring before and after its effective date, because "\* \* \* the well-known dominant purpose of the chief sponsors of the Act was to ensure the deportation of persons like petitioner." Shomberg v. United States, 2 Cir., 210 F.2d 82, 86 (concurring opinion of Judge Frank).

■■ It is well settled that a statute should not be literally construed if to do so would defeat the obvious purpose of the legislation. See Markham v. Cabell, 326 U.S. 404, 409, 66 S.Ct. 193, 195, 90 L.Ed. 165:

"The policy as well as the letter of the law is a guide to decision."

■ In Gulf States Steel Co. v. United States, 287 U.S. 32, 45, 53 S.Ct. 69, 74, 77 L.Ed. 150, the Supreme Court said:

"When possible, every statute should be rationally interpreted with the view of carrying out the legislative intent."

■ And in United States v. Ryan, 284 U.S. 167, 175, 52 S.Ct. 65, 68, 76 L.Ed. 224:

"A literal application of a statute which would lead to absurd consequences is to be avoided whenever a reasonable application can be given which is consistent with the legislative purpose." (Cases cited.)

Furthermore, there is precedent for construing terms such as "date of passage" and "date of enactment" to mean the effective date where that would be the more natural construction. In In re Famolaro, W.D.Pa., 247 F. 596, 597, the District Court construed the words "passage of the act" to mean the date when the law went into effect, rather than the date of its actual enactment, thereby giving the spirit of the act effect over its mere letter. Similarly, United States District Judge Louis E. Goodman, in an unreported opinion, held that the term "enactment of this amendatory Act" meant the effective date of the Act and not the date of its passage. American Electric Construction Co. v. United States, D.C.N.D.Cal., 126 F.Supp. 431. See also People v. Righthouse, 10 Cal.2d 86, 72 P.2d 867; Consolidated Motors v. Skousen, 56 Ariz. 481, 109 P.2d 41, 132 A.L.R. 1040, certiorari denied 314 U.S. 631, 62 S.Ct. 64, 86 L.Ed. 507; State v. Williams, 173 Ind. 414, 90 N.E. 754. Note that this question was decided *sub silencio* in Barrios-Macias v. Minton, D.C.W.D.Tex., 114 F.Supp. 470.

Therefore this Court construes the term "date of enactment" found in 8 U.S.C.A. § 1251(d), to mean the date on which the Act took effect, December 24, 1952, and construes Section 1251(a) to apply to acts occurring at any time before December 24, 1952. Thus the deportation proceeding was properly brought under the Act of June 27, 1952, because petitioner's conviction for the narcotics violation occurred before December 24, 1952, on December 1, 1952.

It is noted that in the preparation of the 1952 edition of the official United States Code the date "June 27, 1952" was substituted for the phrase "the date of enactment of this Act" in Section 1251 (d); but that does not bind this Court, and for the reasons set forth above, the phrase "date of enactment" is construed to refer to the effective date, December 24, 1952, and therefore petitioner's first contention is unsound.

Petitioner next contends that his deportation hearing did not fulfill the requirements of procedural due process because he was not represented by counsel and because his request to change the place of hearing was denied.

At petitioner's deportation hearing on September 30, 1953, the following questions were directed to petitioner and the corresponding answers given, both through an interpreter:

"Q. At this hearing you have the right to be represented by counsel of your own choice and at your own expense, which counsel may be an attorney at law or any person duly qualified to practice before this Service. Do you desire to be so represented? A. I have no money, but I have my lawyer who is in San Francisco and I would like to be represented by counsel but my financial condition does not permit for my lawyer to come from San Francisco to here.

"Q. Have you been in contact with your attorney in San Francisco, or have you made any arrangements to have a local attorney, that is, an attorney that would be available, to appear here at McNeil Island at this proceeding? A. No. However, at this time I would like to make a motion requesting a continuance of this hearing on the ground that my attorney is in San Francisco with which I could be represented by this attorney at this hearing. * * *

"Q. * * * So for that reason your motion is being denied and if it is your desire to be represented at this deportation hearing now at hand by counsel, it will be necessary that your counsel appear at this institution to defend you. Do you understand? A. Yes. I would like again to be advised as to what charges I have to meet formally in order to defend myself.

"Q. The charge that you will have to meet is that the Immigration Service is charging that you appear to be deportable because of

your conviction for violation of the Jones-Miller Act, and conspiracy, in violation of Sections 2553 and 2557 of Title 26 U.S.C. Do you understand? A. Yes.

"Q. In order that the record may be clear, are you agreeable to continue with this hearing at this time with the understanding that if you wish, your attorney may intercede for you at any point during this proceeding up to and including the appeal, if any is taken? A. Yes."

From this portion of the transcript it can readily be seen that petitioner was not denied the right to counsel in the sense that his attorney was excluded from the hearing, but petitioner simply did not have funds to employ counsel. The right to counsel in deportation proceedings has been expressly limited by Congress to counsel retained by the person involved, at no cost to the Government:

"In any exclusion or deportation proceedings before a special inquiry officer * * * the person concerned shall have the privilege of being represented (at no expense to the Government) by such counsel, authorized to practice in such proceedings, as he shall choose." 8 U.S.C.A. § 1362.

But without deciding whether due process would require that in special circumstances a person should be furnished with counsel if he is without funds to employ one, the Court rests its decision in this case on the fact that here the absence of counsel was not prejudicial, because petitioner's conviction on a charge of a narcotics violation is sufficient in itself to justify the issuance of a warrant of deportation. That is, there was nothing counsel could do, and nothing that witnesses could supply that would change the result of the proceedings. This was explained to petitioner by the special inquiry officer in his denial of petitioner's request for a continuance:

"With respect to any witnesses that you may wish to present, it is impossible to determine at this time what you would have in mind with respect to what their appearance might add to your defense. In so far as the instant proceeding is concerned, and the charge which you are required to meet, I am bound by the record of conviction. There is no provision in the law for any relief or the consideration of any extenuating circumstances in a charge of this kind."

In a case where the court held that the absence of counsel at a deportation hearing did not jeopardize an alien's rights because there was no possibility of a different result, the court said:

"The identity of the alien with the party named in the indictment being admitted, the record of the state court could not be attacked in these proceedings, and alone established the necessary grounds for the issuance of a warrant of deportation." Dengeleski ex rel. Saccardio v. Tillinghast, 1 Cir., 65 F.2d 440, 441-442.

Furthermore, this Court is bound by the decision in Madokoro v. Del Guercio, 9 Cir., 160 F.2d 164, 167, certiorari denied 332 U.S. 764, 68 S.Ct. 68, 92 L.Ed. 349, in which the court said:

"We think it unnecessary to determine whether there was here a denial of due process, for all the facts elicited from the appellant at the Fort Lincoln hearing relevant to the deportation of such an alien are admitted to be true. Failure to have counsel, if error, like other errors, may not be prejudicial."

The Madokoro case was followed in a case where an alien did not have counsel at his deportation hearing due to lack of funds, Alves v. Shaughnessy, D.C.S.D. N.Y., 107 F.Supp. 443, 445, and in which a conversation took place at the hearing much like that in the hearing in the case at bar:

"When asked if he had counsel, he replied 'No, I don't have the money.' The following colloquy then ensued:

"Hearing Officer: 'Are you ready to proceed with this hearing at this time without representation by counsel?'

"Alien: 'Yes.'"

Therefore it is not necessary for this Court to decide whether there was a denial of due process, since the fact that the result would not have been different is fatal to petitioner's application for a writ of habeas corpus.

As to the right of the immigration authorities to make a reasonable choice of time and place for a deportation hearing, see United States ex rel. Gould v. Uhl, D.C.S.D.N.Y., 6 F.Supp. 696; United States ex rel. Mastoras v. Mc-Candless, 3 Cir., 61 F.2d 366. Here again it is not necessary for this Court to decide whether there was denial of due process as to these aspects of the hearing, in view of the fact that the result would not have been different even if petitioner's request for a continuance had been granted.

It is ordered that Pietro Biagio Raimondi's petition for a writ of habeas corpus be, and the same is hereby denied, and the order to show cause formerly issued in this proceeding be, and the same is hereby discharged.