**UNITED STATES v. COAST WINERIES, Inc., et al.**

**No. 10061.**

Circuit Court of Appeals, Ninth Circuit.

Nov. 7, 1942.

Joseph Lawrence, Director, Bond and Spirits Division, Dept. of Justice, Benjamin H. Pester, Chief, Bond and Tax Section, and Julian D. Simpson, Chief Compromise Section, all of Washington, D. C., and J. Charles Dennis, U. S. Atty., Gerald Shucklin, Asst., and Thomas R. Winter, Gen. Counsel Representative, all of Seattle, Wash., for appellant.

Allen, Hilen, Froude & DeGarmo and Gerald DeGarmo, all of Seattle, Wash., Hubbert & Mullins and W. A. Hubbert, all of Yakima, Wash., and H. W. B. Smith, of San Francisco, Cal., for appellee U. S. Fidelity & Guaranty Co.

Before GARRECHT, HANEY, and HEALY, Circuit Judges.

GARRECHT, Circuit Judge.

This is an appeal from a judgment entered by the District Court of the United States for the Western District of Washington, Northern Division. The United States of America, appellant, instituted this suit against the United States Fidelity and Guaranty Company on two winemakers' bonds executed by The Coast Wineries, Inc., as principal and the United States Fidelity and Guaranty Company as surety, which bonds guaranteed payment to appellant of certain taxes incurred by The Coast Wineries, Inc., in the making and selling of wines at Yakima, Washington.

From the findings of the District Court, which are supported by the pleadings, ad-

missions made, and evidence adduced, we summarize the following pertinent facts:

During the years 1934 and 1935 The Coast Wineries, Inc., was engaged in the business of making and selling wines. To comply with the law The Coast Wineries, Inc., as principal, and appellee, United States Fidelity Company, as surety, on February 1, 1934, executed a bond in the sum of $5,000, and on August 9, 1934, the same parties executed a bond in the sum of $3,000, the obligations of which bonds were identical and as follows: "Now, therefore, the condition of this obligation is such that if the said principal shall fully and faithfully comply with all requirements of the laws of the United States and regulations issued in pursuance thereof respecting the Production, storage, sale, or removal, and the accounting of all wines produced or received by him, or which now remain on said premises; and if the said principal shall well and truly pay all taxes due on said wines at the time and in the manner required by said laws and regulations, then this obligation to be void; otherwise to remain in full force and effect." As a condition to the writing of these bonds, the appellee required indemnitors in the persons of N. J. Dolph, W. A. Hubbert, and Maude Hubbert, his wife, C. T. McKenzie, and Bertha McKenzie, his wife.

In February of 1935 The Coast Wineries, Inc., filed a petition for corporate reorganization in the United States District Court, and on February 27, 1935, on behalf of appellant, the Commissioner of Internal Revenue, acting through Collector of Internal Revenue for the Collection District of Washington, filed a claim in said proceedings for certain taxes, in the sum of $501.67, plus interest, covering capital stock tax assessed under Section 215 of the National Industrial Recovery Act, 48 Stat. 207, for the fiscal year 1934, and on March 4, 1935, filed a claim in said proceedings designated in its record as claim No. 2, for certain taxes in the sum of $9,387.21, plus interest (which claim included the item of taxes in the amount of $3,162.56, sought to be recovered in this action), said taxes being claimed for the taxable years 1934 and 1935 as assessed on distilled spirits under Sections 3244 and 3176 of the Revised Statutes, as amended, 26 U.S.C.A. Int.Rev. Code, §§ 3250, 3612, and under the Liquor Taxing Act of 1934, 48 Stat. 313, and on June 10, 1935, filed a claim in said proceedings for certain taxes, in the sum of $76.20, plus interest, as a proposed assessment for the taxable years 1934 and 1935 of documentary stamp tax under Title V, Part III, §§ 721-726, Revenue Act of 1932, 26 U.S.C.A. Int.Rev.Acts pages 629-636. After the appointment and qualification of the trustee in the matter of the bankruptcy of The Coast Wineries, Inc., said trustee filed objections to the three claims of the United States of America, above mentioned.

On June 6, 1935, the appellant gave written notice to The Coast Wineries, Inc., and to the appellee, United States Fidelity and Guaranty Company, of possible liability upon the bonds sued upon herein, and in accordance therewith the appellee, United States Fidelity and Guaranty Company, gave similar written notice to the indemnitors upon its bonds, namely, N. J. Dolph, W. A. Hubbert, and Maude Hubbert, his wife, and one McKenzie; but thereafter, in reliance upon assurances given by representatives of the Alcohol Tax Unit in Seattle, Washington, that the taxes claimed by the plaintiff for which the defendant, United States Fidelity and Guaranty Company, might be liable upon its bonds had been abated and withdrawn, and upon the record in the Bankruptcy Proceedings of The Coast Wineries, Inc., as hereinafter set forth, showing the disallowance of said tax claims, the defendant, United States Fidelity and Guaranty Company, refrained from filing a creditor's claim within the time allowed by law in the Estate of N. J. Dolph, Deceased, who died subsequent to the adjudication in bankruptcy of The Coast Wineries, Inc., and who left a substantial estate from which such a claim could have been paid.

On June 16, 1935, The Coast Wineries, Inc., was duly adjudicated a bankrupt, and the Yakima Valley Bank and Trust Company was appointed as trustee in bankruptcy, and was authorized to and did employ W. B. Clark and T. E. Grady of Yakima, Washington, as its attorneys. The only substantial asset of The Coast Wineries, Inc., was a quantity of wine, the production and rectification of which was the basis of the claim for taxes asserted in this action, and as filed in the Bankruptcy of The Coast Wineries, Inc., as a part of its claim for $9,387.21, and said wine was ordered sold by the trustee in bankruptcy of The Coast Wineries, Inc., for the sum of $12,500. Subsequent to said sale, at a hearing held on September 16, 1935, at

which the attorney representing appellant, the trustee, and the purchaser were all present, the District Judge having charge of said bankruptcy proceeding determined that said wine should be delivered to the purchaser free and clear of tax, and directed the trustee to purchase and affix to the containers the necessary revenue stamps, and pursuant to such direction the trustee did purchase from the proceeds of the sale of said wine Internal Revenue stamps in the total sum of $9,171.62 and did affix same to said containers. This order also provided: "It is further ordered, adjudged and decreed that any and all claims which the United States Government has, or may hereafter have or assert, if any, against the proceeds from the sale of said property in the hands of the Trustee, and the validity, amount and priority thereof shall hereafter be determined by the Court."

Thereafter the objections to the three claims of the United States of America, above mentioned, came on for hearing before the special master in the Matter of the Bankruptcy of The Coast Wineries, Inc., who had theretofore been appointed to hear and pass upon numerous matters in connection with this bankruptcy matter. Said special master sent out a notice to the creditors of The Coast Wineries, Inc., of a hearing to be held at Yakima, Washington, on September 18, 1935, at 9:30 a. m. Among other matters, this notice stated that the hearing was to determine "The amount, validity and priority of the claims of the United States, the State of Washington, and Yakima County for taxes and assessments". On the morning of said day, at Yakima, Washington, and prior to the hearing before the special master, there occurred a conference between Judge Grady, attorney for the trustee, and Mr. Winter, special attorney for the Bureau of Internal Revenue, at which, as testified to by the attorney for the trustee and found by the trial court, it was agreed that if the trustee would withdraw his objections to the claims of appellant for $501.67 and $76.20, the appellant would withdraw, as abated, its larger claim for $9,387.21, of which the claim here in suit was a part. In accordance with this agreement between counsel they together appeared before the special master at the time and place set for the hearing, and, among other things, the following occurred:

"Mr. Winters: If the Court please, I represent the United States Government. I do not know whether it has been explained to your Honor or not, but Saturday Judge Webster entered an order directing the Trustee to purchase stamps and put on the wine which has not been sold, and directed the Government to gauge that wine and figure out the alcoholic action, and that is being done this afternoon.

"* * * I am informed, at least I have an understanding, that the Trustee is going to file a claim in abatement of all of that tax in view of Judge Webster's decision, and if that claim in abatement is allowed, the Government will request authority to withdraw the $9,000 claim filed in this Court, and there will be no use taking testimony in that matter.

"Now, will the Court continue the hearing on the Government $9,000 claim until some later date, in order that the claim in abatement might be filed, and in all probability the claim will be withdrawn if the action in abatement is allowed?

"The Master: There is just a possibility of that?

"Mr. Winters: Well, it has developed into more than a possibility, as I have advised Judge Grady, and I have assurance from the Government, and I am personally recommending the abatement of the claim in view of the situation in this matter, * * *."

On September 28, 1935, pursuant to the continuance granted on September 18, 1935, the matter again came on for hearing before the special master. Mr. Winter again appeared, and the following occurred:

"Mr. Winter: With respect to the claim of the United States for nine thousand and some odd dollars the Trustee has duly filed a claim in abatement with the Collector of Internal Revenue seeking the abatement of the full amount covered by this claim, and in view of the order of the Court authorizing and directing the Trustee to purchase and cancel stamps on the wine sold to R. D. Rovig, I am recommending to the Commissioner of Internal Revenue that the tax covered by the aforementioned claim be abated, in which event the claim will be withdrawn.

"It is, therefore, requested that an extension be granted of ten days in order to allow administrative action to be taken by the Bureau of Internal Revenue.

"The Master: Motion granted.

"Mr. Grady: The trustee recommends to the Master that the $500.00 capital stock stamp tax claim, and the other $76.00 stock tax claim be allowed to take the priority under 64–A."

Thereafter, the Collector of Internal Revenue for the Collection District of Washington sent to the Clerk of the District Court for the Eastern District of Washington, at Spokane, Washington, under date of October 15, 1935, a notice in writing, which was filed in the bankruptcy proceedings of The Coast Wineries, Inc., on October 17, 1935, reading as follows:

"Reference is made to our claim #2 filed under date of June 7, 1935, covering tax on distilled spirits due from the above named corporation in the amount of $9,-387.21.

"You are advised that upon the recommendation of the District Supervisor of the Alcohol Tax Unit, we have abated the above tax and are withdrawing our proof of claim covering the same. Our claims #1 and #3 covering capital stock taxes are still in effect."

Pursuant to such agreement and withdrawal the special master made his report to the District Judge, and with reference to the claim of the Government for $9,387.21, reported as follows: "Claim * * * filed by the United States Collector of Internal Revenue in the amount of Nine Thousand Three eighty-seven and 21/100 ($9,387.21) Dollars has been withdrawn. * * *" Later Judge Webster approved the report of the special master.

Approximately one and one-half years after the bankruptcy court had been definitely advised, on October 15, 1935, that the Government's claim for taxes in the sum of $9,387.21, and as covered by its creditor's claim, had been abated and withdrawn, the Government, on April 15, 1937, filed in the Matter of the Bankruptcy of The Coast Wineries, Inc., a claim in the sum of $3,162.56, plus interest, said claim being for a portion of the taxes covered by the previous creditor's claim of $9,387.-21, which had been disposed of under the circumstances and pursuant to the agreement mentioned above, and being the tax claim asserted in this action; and upon the objections of the trustee in bankruptcy of The Coast Wineries, Inc., to such claim, filed on April 15, 1937, said claim came on for hearing before Judge Webster of the United States District Court for the Eastern District of Washington, Southern Division, on October 5, 1937, and resulted in the entry of an order on November 12, 1937, reading as follows:

"The above matter coming on regularly for hearing on the 5th day of October, 1937, on the claim of the United States of America covering taxes assessed under Section 3244 and 3126 [sic] of Revised Statutes and the Liquor Taxing Act of 1934 in the sum of $3,162.56 plus interest, said claim having been filed by the acting collectors of Internal Revenue for the District of Washington as agent for the United States of America on or about April 13, 1937, and it appearing to the Court that the said claim of the United States was and is part of the original claim of $9,387.21 which was filed by the Collector of Internal Revenue for the District of Washington on or about February 28th, 1935, and which claim the said Collector of Internal Revenue advised the Special Master in Chancery by letter of October 15, 1935, was abated on his records and thereby withdrawn, and it appearing that the Special Master has disallowed and expunged said claim in his report, to which no exceptions were taken by the claimant, and which report to that extent has been approved by this Court in its Memo Decision on file herein.

"Now, Therefore, on oral motion of the trustee in bankruptcy, it is,

"Ordered, adjudged and decreed that the said claim of the United States in the sum of $3,162.56, filed April 13, 1937, be and the same is hereby expunged and disallowed."

to which the United States of America, claimant, excepted, which exception was allowed. No review or appeal was ever taken from this order.

From the foregoing facts, which were found by the District Court and which are sustained by the evidence, the trial court concluded:

"That the proceedings in the Matter of the Bankruptcy of The Coast Wineries, Inc., in Cause Number B-1959, in the District Court of the United States for the Eastern District of Washington, Southern Division, and in particular the Order of Judge J. Stanley Webster of November 12, 1937, are res judicata between plaintiff and defendant, United States Fidelity and Guaranty Company, upon the issues presented by this suit, and the action of the

648

plaintiff to recover from the defendant, United States Fidelity and Guaranty Company, upon the tax claim asserted herein, is barred by the former adjudication, expunging and disallowing said claim;

"That the plaintiff is estopped to assert the claim sued upon herein as against the defendant, United States Fidelity and Guaranty Company."

and thereupon entered the judgment dismissing the action with prejudice. The appeal is from this judgment.

Appellant insists that the order of Judge Webster, dated November 12, 1937, and the other proceedings had in the bankruptcy matter of The Coast Wineries, Inc., do not constitute res judicata; also that appellant was not, by any proceedings theretofore had, estopped to assert its claim here sued upon. Appellant further contends that although the facts as found would constitute res judicata or estoppel if invoked against an ordinary litigant, nevertheless the Government could not be bound because any agreements or concessions made by the ·Collector or the officials or attorneys representing the Government in the litigation were not binding on the United States and could be disavowed at any time by appellant, notwithstanding any court judgment or decree.

The jurisdiction of the bankruptcy court over the subject matter of taxes is specifically granted by the Bankruptcy Act, § 64, sub. a, as amended, 44 Stat. 662, 666, 11 U.S.C.A. § 104, sub. a, which, among other things, provides that "The court shall order the trustee to pay all taxes legally due and owing by the bankrupt to the United States". This language necessarily implies that in controverted matters the court must judicially determine the amount of the tax due. In re Anderson, D.C., 275 F. 397. This procedure was followed in this case. When the court held the hearing to determine if the sale of the wine should be made subject to the tax, the Government's attorney was present and the court thereupon directed the trustee to purchase from the proceeds of the sale of the wine Internal Revenue stamps in the total sum of $9,171.62 and affix them to the containers, so that the purchaser acquired the wine free of tax. In the very same order, and as a part thereof, the court further ordered "that any and all claims which the United States Govern-

ment has, or may hereafter have or assert, if any, against the proceeds from the sale of said property in the hands of the Trustee, and the validity, amount and priority thereof shall hereafter be determined by the Court". Claims for the taxes sought to be recovered in this action were disallowed first by order of December 21, 1936, and again by the order of November 12, 1937, from neither of which was there any appeal.

Subject to the right to obtain a re-examination on review, an order disallowing a claim in bankruptcy is binding and conclusive on all parties or their privies, and being in the nature of a final judgment, furnishes a basis for a plea of res judicata. 8 C.J.S., Bankruptcy, p. 1314, § 444; In re Anderson, 2 Cir., 279 F. 525; United States v. American Surety Co., 2 Cir., 56 F.2d 734; In re Universal Rubber Products Co., D.C., 25 F.2d 168. The judgments, decrees, and orders of the bankruptcy court in bankruptcy matters possess all the attributes of finality and estoppel accorded to judgments from courts of general original jurisdiction. Remington on Bankruptcy, 4th ed., Vol. 5, § 2312.-75, p. 459.

While appellant concedes that a judgment which is res judicata in favor of the principal on a bond and which relieves the principal of his liability also relieves the surety, the contention is made here that the original claim was withdrawn and was never passed upon by the court. The evidence and findings do not sustain that view. The record shows the claim was before the court for adjudication upon its merits and disallowed.

The correct ruling for the determination of whether the disallowance of a claim in bankruptcy is res judicata has been laid down in United States v. American Surety Company, 2 Cir., 56 F.2d 734, 736, where the court said: " * * * It may also be conceded that the allowance or disallowance of a claim in bankruptcy should be given like effect as any other judgment of a competent court, in a subsequent suit against the bankrupt or any one in privity with him. See Lesser v. Gray, 236 U.S. 70, 35 S.Ct. 227, 59 L.Ed. 471; * * *. But the distinction must be noted between disallowance of a claim because the creditor had a nonprovable debt and disallowance because he had no debt

at all. Disallowance on the former ground decides nothing as to the merits of the claim. * * *"

In the case cited the court denied the claim of res judicata because the duty to account, which was the obligation of the bond, arose subsequently to the filing of the petition in bankruptcy and therefore the claim was nonprovable. In the case at bar the claim was not rejected on the ground that it was not provable, but upon a hearing on the merits, was disallowed because of the agreement of compromise made in the bankruptcy proceedings between the parties, and which had been approved by the court. The rule quoted above sustains the holding of the trial court. Furthermore, no reason is suggested why this claim, if valid, was a nonprovable debt in the bankruptcy proceedings.

To avoid the conclusiveness of the defense of res judicata appellant further contends that this action is upon the bonds on which appellee was surety and not on the tax claim itself, and the following cases are cited to sustain its position: Bowers v. American Surety Co., 2 Cir., 30 F.2d 244; United States v. John Barth Co., 279 U.S. 370, 49 S.Ct. 366, 73 L.Ed. 743; Gulf States Steel Co. v. United States, 287 U.S. 32, 53 S.Ct. 69, 77 L.Ed. 150; Gray Motor Co. v. United States, 5 Cir., 16 F.2d 367; United States v. Wyoming Central Ass'n, 10 Cir., 70 F.2d 869.

In the Bowers case the situation was different from the case at bar—not only was the bond given pending claim for an abatement of the tax assessment and guaranteeing payment of the tax if the abatement was refused, but in a subsequent bankruptcy proceeding, after the refusal to allow the claim in abatement, the Government steadfastly refused to be drawn into the bankruptcy proceedings and was not a party to the order expunging the claim, and therefore the court held the United States was not estopped by the order. Likewise, in each of the other cases relied upon the suit of the Government was upon a bond given in behalf of a taxpayer to stay the collection of an income tax pending decision upon a claim for abatement. By giving the bond, postponement of the payment admittedly due, as found by the Commissioner, was secured, together with immunity from distraint. In this class of cases it has been uniformly held that the stay of enforcement secured upon the giving of the bond was a consideration independent of the tax and being a primary and independent obligation of the surety was not subject to defenses which might be made by the taxpayer with respect to the validity of the tax.

As to the contention that the Government is not bound by any admission or agreement of its agents or attorneys in the proceedings before the bankruptcy court, the authorities cited to support the argument are of cases wherein the taxpayer sought to defend against a tax or suit on a bond because of waivers or statements or representations not made in court but to the taxpayer, prior to the suit, by the Collector, his deputy, or some other official who acted without authority. In such cases the courts have held that the Government was not estopped from asserting any claim it actually had, which is a very different situation from the case here, where the issues were raised before, and disposed of by, a court of competent jurisdiction in a proceeding had for that purpose.

A bankruptcy court in which an estate is being administered has full power to inquire into the validity of any debt or obligation of the bankrupt upon which a demand or claim against the estate is based. This is essential to the performance of the duties which the law imposes upon it. The obligation here sued upon, after hearing thereon, was disallowed. No effort was made by the appellant to secure the review of the action of the bankruptcy court in the direct way presented by statute and the decision is now res judicata.

Appellant also assigned as error the admission of evidence showing the agreement between the attorneys and agents of the Government and the attorney for the trustee upon the basis of which the claim was disallowed, on the ground that there was no specific allegation in the pleading in relation thereto. The amended answer did set up the fact that this claim had been passed upon and disallowed, and pleaded reliance upon the orders and judgment without stating the evidence on which the orders were based. This was sufficient in this case because the tender of this evidence was no surprise. Indeed, in his opening statement the attorney for appellant advised the trial court that he would probably be required to take the witness stand, which he did later and the only purpose of which was to substantiate the ap-

pellant's position that there had been no agreement of compromise. So, any omission of reference to the agreement in the pleading as a basis for the order worked no hardship on appellant.

Appellant relies upon the case of Royal Indemnity Co. v. United States, 313 U.S. 289, 61 S.Ct. 995, 85 L.Ed. 1361, where the court held a collector of internal revenue could not surrender a bond without collecting interest due on the tax, which has no bearing on a tax claim determined by a court of competent jurisdiction upon representation made to the court by the attorneys and officials authorized to appear for the Government, all parties, as here, being before the court on formal hearing, and where exception to the judgment was noted but no appeal therefrom prosecuted.

In the case of United States v. Sakharam Ganesh Pandit, 9 Cir., 15 F.2d 285, certiorari denied 273 U.S. 759, 47 S.Ct. 473, 71 L.Ed. 878, this court, in a unanimous opinion written by Judge Neterer, exhaustively discussed the question of res judicata and its binding effect in cases where the United States is a party. We think the reasoning of that case is applicable here. The judgment of Judge Webster is final, even if erroneous; not having been appealed from, is res judicata.

### Upon the Question of Estoppel.

■■■ The facts show that upon being notified that the Government was demanding from the bankrupt payment of the taxes herein sued for, the appellee, United States Fidelity and Guaranty Company, took action to save itself from loss if it should be found to be liable on any of its bonds. It notified its indemnitors immediately and kept in communication with the department of Internal Revenue and the proceedings in the Matter of the Bankruptcy of The Coast Wineries, Inc. Thereafter it was advised of the agreement between the Government and the trustee, whereby the bankruptcy court had entered its order disallowing this claim for taxes. Appellee was also advised by the Revenue office of the disposition made of the matter by the court, and that it had no claim. Accordingly, the appellee, believing that it had been relieved of liability on its bonds refrained from presenting any creditor's claim against the Estate of N. J. Dolph, Deceased, and in reliance upon the order of the court and the representations of the Internal Revenue office permitted the time for filing this claim to expire. The record shows that the Estate of said N. J. Dolph, Deceased, would have been sufficient to pay any claim of appellee had it been presented, based on its indemnity agreement. We do not understand appellant to question that these facts would establish estoppel as a matter of law between individuals in the ordinary case. But appellant, in this connection, again contends that an attorney for the Government cannot bind it by any stipulation or agreement in a court proceeding in which he is authorized to appear, even where such agreement is acted upon by counsel for the parties and the court; and appellant further contends that the United States of America can never be estopped by the acts of its agents.

No cases directly in point have been cited, but the argument and authorities on the question of res judicata are persuasive here. The following cases also recognize the principle. United States v. Alexander, 110 U.S. 325, 4 S.Ct. 99, 28 L.Ed. 166; Moses v. United States, 166 U.S. 571, 17 S.Ct. 682, 41 L.Ed. 1119. If the contention of appellant is upheld no trial court can accept a statement or stipulation of a Government attorney during the progress of a trial, which must necessarily result in delay and confusion, which would be seriously detrimental to the orderly administration of justice.

The findings and conclusion of the trial court are sustained and the judgment is affirmed.