Jack J. WALLEY, Executor of the Estate of Murrey London, Deceased, Appellant,

v.

UNITED STATES of America, Appellee.

No. 15924.

United States Court of Appeals Ninth Circuit.

Oct. 2, 1958.

Milton Davis, Los Angeles, Cal., for appellant.

Charles K. Rice, Asst. Atty. Gen., Meyer Rothwacks, Lee A. Jackson, A. F. Prescott, John J. Pajak, Attorneys, Department of Justice, Washington, D. C., Laughlin E. Waters, U. S. Atty., Edward R. McHale, Asst. U. S. Atty., Los Angeles, Cal., for appellee.

Before STEPHENS, Chief Judge, and ORR and BARNES, Circuit Judges.

ORR, Circuit Judge.

■ The question for determination on this appeal is—does the filing of a claim by the United States for taxes against a bankrupt's estate, and its allowance without contest, constitute a personal judgment against the bankrupt for any balance not realized from the estate?

Appellant is the executor of the estate of Murrey London, deceased. Murrey London died in 1954. For a period prior to his death, he was engaged in business under the fictitious name of the London Construction Company. In 1948 the decedent filed a voluntary petition in bankruptcy and in that proceeding the Commissioner of Internal Revenue presented a claim for taxes due under Chapter 9, Subchapters A, C, and D of the Internal Revenue Code of 1939, 26 U.S. C.A. Chapter 9, relating to insurance contribution, unemployment, and withholding taxes. The taxes were regularly and timely assessed and the Bankruptcy Court allowed the claim in the amount of $5,759.04 without contest having been made. A dividend of $243.29 was paid to the government on the claim. Nothing further was realized from the estate.

Subsequent to London's death the United States filed an action against his estate (not the bankruptcy estate) for the amount remaining unpaid on the claim previously allowed by the Bankruptcy Court. Said action was commenced in 1957, more than six years after the taxes were assessed in 1948. The government contends that the ordinary period of the statute of limitations, which bars suits to collect assessments com-

menced after six years [1], does not apply in the instant case because it is not an original suit on the assessment but rather a suit on a prior judgment entered by the Bankruptcy Court, and there is no limitation against the United States in bringing suit on a judgment. Investment & Securities Co. v. United States, 9 Cir., 1944, 140 F.2d 894. It is conceded that the claim was not discharged in the bankruptcy proceeding because tax claims of the United States are not so dischargeable. Bankruptcy Act Section 17, sub. a(1), 11 U.S.C.A. § 35, sub. a(1).

The instant suit was not barred if there existed a prior valid judgment against the decedent. Appellant's contention is that since the claim in bankruptcy was not contested it could not have the effect of a judgment, and further, that even if it were a judgment it was not one against the decedent personally, but only operated against the estate in bankruptcy.

The jurisdictional grant of the Bankruptcy Court is contained in Section 2, sub. a(2) of the Bankruptcy Act, 11 U.S.C.A. § 11, sub. a(2). It is given the power to "Allow claims, (and) disallow claims * * * against bankrupt *estates*" (Emphasis added). We think the wording of the statute is clear and confines the operation of the allowance of a claim to the bankrupt estate in existence at the time of the institution of the bankruptcy proceedings. This harmonizes with the purpose of the Bankruptcy Act and was said to be the law as far back as 1931 in the case of In re McChesney, D.C.S.D.Cal.1931, 58 F.2d 340, wherein it was said "While the allowance of a claim is in effect a judgment, it is only such for the purpose of the Bankruptcy Act * * * and to the extent of the assets belonging to bankruptcy estate in which it is filed." A sim-

ilar result was reached on comparable facts in Goldstein v. Pearson, Mun.Ct. App.D.C.1956, 121 A.2d 260.

We are impressed with the reasoning contained in these cases notwithstanding the argument that other cases have detracted from their value as precedents. Among the cases said to so detract is the case of Lewith v. Irving Trust Co., 2 Cir., 1933, 67 F.2d 855. That case is readily distinguishable on its facts as it was merely concerned with the *res judicata* effect of a prior claim as between the *Trustee* and a creditor with respect to the estate in bankruptcy.

Other cases cited are United States v. Coast Wineries, 9 Cir., 1942, 131 F.2d 643, and United States v. American Surety Co. of New York, 2 Cir., 1932, 56 F.2d 734. These two cases deal with the *res judicata* effect of bankruptcy proceedings pursuant to a proof of claim. The reason for their citation seems to be that inasmuch as the disallowance of a claim in a bankruptcy proceeding is *res judicata* as to the validity of the debt in a subsequent proceeding, the said proceeding must therefore be a judgment in favor of anyone capable of asserting it. We think such a conclusion confuses the doctrine of estoppel with the effect of a judgment. These cases do not involve the question of whether the bankruptcy proceeding resulted in a personal judgment against the bankrupt. They deal with the question of whether creditors who were parties in the bankruptcy proceeding are estopped to deny certain findings of fact and conclusions of law in those proceedings. In the Coast Wineries case and the American Surety case the defendants were sureties on bonds given by the respective bankrupts to the government to insure the payment of certain excise taxes in the one case and to insure certain limited uses of alcohol in the other. In both cases the defense

1. It was stipulated that the applicable statute, if any, is § 3312(d) of the Internal Revenue Code of 1939, 53 Stat. 400, 26 U.S.C.A. § 3312(d). It reads: "Where the assessment of any tax imposed by this title has been made with-

in the statutory period of limitation * * * such tax may be collected * * by a proceeding in court, but only if begun—(1) Within six years after the assessment of the tax * * *."

that sureties have no liability once the principal debtor is found not to be liable was relied on. In each case it was asserted that the prior proceedings in bankruptcy had determined that the principal debtors were not liable, and therefore the creditor (the government) being a party to those proceedings, was estopped to challenge the Bankruptcy Court's findings.

Had the government in the instant case sued the bankrupt within the permissible period of limitations, the bankrupt perhaps would have been estopped to deny the effect of the allowance of the claim in the bankruptcy proceeding. However, this could not be predicated on the ground that the prior proceeding was a judgment against him *in personam*.

◼ Many situations may create an estoppel, but not all rise to the dignity of judgments. In order for a valid judgment to have been rendered against the bankrupt there must have been jurisdiction *in personam* over him. Although a judgment may be conclusive against one who has litigated his interest in an asset, the judgment rendered can only determine his right to and in the asset and cannot from this restricted area blossom out into a personal judgment. An example may be found in a garnishment or attachment proceeding where the defendant is not personally served. In such a situation a defendant may be liable in an amount greater than the value of the assets over which the court has jurisdiction, but the judgment rendered does not entitle the plaintiff in such a suit to subsequently pursue and subjugate assets subsequently acquired by the debtor. The distinction is clearly noted in the Restatement of Judgments, Section 76 (1942): "(1) In a proceeding begun by attachment or garnishment the judgment is conclusive as to the interest of the defendant in the thing attached or in the obligation of the garnishee to the defendant", but "(2) The judgment in such a proceeding will not bind the defendant personally unless the court has jurisdiction over him, and it is not conclusive as to a fact upon which the judgment is based unless the defendant has actually litigated the question of the existence of the fact".

◼ Here, as we have heretofore noted, the Bankruptcy Court had jurisdiction over the estate in bankruptcy and no more. Bankruptcy Act, § 2, sub. a(2), 11 U.S.C.A. § 11, sub. a(2). "* * * [T]he filing of a claim in bankruptcy is not the institution of a plenary suit. It is a claim against assets in the hands of the bankruptcy court, not an action *in personam*". Meyer v. Fleming, 1946, 327 U.S. 161, 170, 66 S.Ct. 382, 387, 90 L.Ed. 595. See also 5 Remington, Bankruptcy, Section 2322 (5th ed. 1953). The bankrupt is on notice that his existing assets are in the estate in bankruptcy and are being subjected to payment of claims filed therein, and it is not within the contemplation of the act that he will thereby be informed that future assets he may acquire will be subjected to the payment of non-dischargeable claims proved in the bankruptcy proceeding.

Even if it be conceded that the bankrupt was a sufficient participant in the litigation regarding his estate in bankruptcy because of his duty to report on the "correctness of all proofs of claim filed against his estate", Section 4, sub. a(3) of the Bankruptcy Act, 11 U.S.C.A. § 25, sub. a(3), at most there would exist an estoppel, or *res judicata*, as to matters therein litigated or that could have been litigated, which in this case was the validity of the claims and the application of the assets to their payment.

The judgment is reversed.