**UNITED STATES of America for the use and benefit of ALLEN CONSTRUCTION CORP.**

v.

**Robert A. VERRIER, d/b/a Verrier Construction Co. and American Surety Company, Hartford Accident & Indemnity Company, Massachusetts Bonding & Insurance Company, Continental Casualty Co., New Amsterdam Casualty Company.**

**No. 1102 N.D.**

United States District Court.
D. Maine, N. D.
Dec. 7, 1959.

Lewis I. Naiman, Gardiner, Me., Francis E. Day, Bangor, Me., for plaintiff.

Robert D. Schwarz, Herbert H. Bennett, Portland, Me., for defendant.

GIGNOUX, District Judge.

This matter comes before the Court upon the defendants' motions for summary judgment in their favor upon the claim set forth in the complaint and upon the counterclaim set forth in the answer. Fed.R.Civ.P. 56, 28 U.S.C.A.

The principal action arises under the Miller Act, 40 U.S.C.A. §§ 270a–270d. It seeks recovery of the sum of $159,680.70, plus interest, alleged to be due the use plaintiff Allen Construction Corp. for labor and materials furnished pursuant to contract with the defendant Verrier and used in connection with the construction by Verrier for the United States Government of Special AAA Facilities at Loring Air Force Base, Limestone, Maine. The remaining defendants are the sureties on the payment bond furnished by Verrier to the United States as required by the Miller Act. The defendants counterclaim for $162,550 damages allegedly resulting from the breach by the use plaintiff of the contract upon which its suit is based. The defendants have moved for summary judgment in their favor upon the plaintiff's claim on the grounds that: (1) the use plaintiff is not a proper party plaintiff under Rule 17(a) of the Federal Rules of Civil Procedure because it as-

signed to First National Granite Bank of Augusta, as security for loans made or to be made by the Bank, all amounts due or to become due under the contract,[1] and (2) the use plaintiff is barred from bringing this action by Rule 13(a) of the Federal Rules of Civil Procedure because it failed to assert its present claim as a counterclaim to a claim for breach of the same contract which was filed by Verrier and allowed by the Referee in recent bankruptcy proceedings in this Court (In re Allen Construction Corp., D.C.Me., Bankruptcy No. 6–62 Inv.S.D.). The defendants have also moved for summary judgment in their favor upon their counterclaim on the ground that the use plaintiff received no discharge from the Bankruptcy Court and the allowance of Verrier's claim by the Referee constituted a valid judgment which cannot be collaterally attacked by the plaintiff in this proceeding.

## I.

The defendants have first asserted in support of their motion for summary judgment upon the complaint that the use plaintiff is not a proper party plaintiff under Rule 17(a) of the Federal Rules of Civil Procedure because it has assigned to First National Granite Bank of Augusta all its rights to amounts due under its contract with Verrier. The assignment, which was accepted by Verrier at the time of its execution by the use plaintiff, is in the following form:

"April 12, 1956
"In consideration of one dollar and other valuable considerations paid to the undersigned by the First National Granite Bank of Augusta, the receipt of which is hereby acknowledged, Allen Construction Corp. by its president hereunto duly authorized does hereby assign to said First National Granite Bank of Augusta all amounts due or to become due to said Allen Construction Corp. on

---

1. There is also pending in this Court an action under the Miller Act by the Bank against these defendants for recovery of the sum of $32,891.09, plus interest, alleged to be due it as assignee for amounts loaned to Allen. (United States of America for the use and benefit of First National Granite Bank of Augusta v. Robert A. Verrier, et al., D.C.Me. Civil No. 1104 N.D.) By agreement, the two actions have been consolidated for trial.

its contract with Robert A. Verrier Construction Co. for construction work on Air Force facilities in Caswell and Limestone, Maine, as security for loans made, or to be made by said Bank to said Allen Construction Corp.

> "Allen Construction Corp.
> "By /s/ Guy R. Allen
> "President"

Rule 17(a) provides:

> "*Rule 17. Parties Plaintiff and Defendant; Capacity*
>
> "(a) *Real Party in Interest.* Every action shall be prosecuted in the name of the real party in interest; but an executor, administrator, guardian, trustee of an express trust, a party with whom or in whose name a contract has been made for the benefit of another, or a party authorized by statute may sue in his own name without joining with him the party for whose benefit the action is brought; and when a statute of the United States so provides, an action for the use or benefit of another shall be brought in the name of the United States."

The defendants' contention is that because of the assignment, the Bank, and not Allen, is the "real party in interest" and under Rule 17(a) is the only party entitled to prosecute an action on the contract.

■■ The true meaning of the "real party in interest" provision in Rule 17 (a) has been summarized by Professor Moore as follows: *"An action shall be prosecuted in the name of the party who, by the substantive law, has the right sought to be enforced."* [2] 3 Moore, Federal Practice § 17.07 (2d ed. 1948). See also 2 Barron & Holtzoff, Federal Prac-

tice and Procedure § 482 (1950). In an ordinary diversity case the law which would determine who has this substantive right is, of course, the law of the state in which the federal district court is sitting. 3 Moore § 17.07; See Sheehan v. Municipal Light & Power Co., 2 Cir., 1945, 151 F.2d 65, 70. And although jurisdiction in this case is conferred by the Miller Act and not by diversity of citizenship, the weight of authority supports the view that state law properly rules here, where the issue does not involve the interpretation or applicability of a federal statute and there is no supervening federal interest which dictates a need for federal uniformity. See Continental Casualty Co. v. Schaefer, 9 Cir., 173 F.2d 5, 7–8, certiorari denied, 1949, 337 U.S. 940, 69 S.Ct. 1517, 93 L.Ed. 1745; Macri v. United States, 338 U.S. 820, 70 S.Ct. 63, 94 L.Ed. 497; United States v. Rogers & Rogers, D.C. S.D.Cal.1958, 161 F.Supp. 132, 135; Hart & Wechsler, The Federal Courts and the Federal System 694–700 (1953). Hence this Court should decide this question as would the courts of the State of Maine, where this Court sits and all relevant events regarding the contract occurred.

■ It seems clear from the Maine cases that the assignor of a chose in action for collateral security retains an enforceable substantive right for the purposes of an action against the debtor when the right of action assigned is substantially in excess of the debt secured, at least when the assignee has expressly or impliedly consented to suit by the assignor in his own name. Simansky v. Clark, 1929, 128 Me. 280, 147 A. 205, 65 A.L.R. 1316; Rosenberg v. Cohen, 1928, 127 Me. 260, 143 A. 97.[3] In the latter

---

2. There may be some doubt as to whether the real party in interest provision in Rule 17(a) applies at all to cases such as the instant one, because the last clause of the Rule refers *specifically* to actions which must by statute be brought in the name of the United States. Even though the first clause of Rule 17(a) may not be directly applicable, however, it would seem that the use plaintiff must

have the substantive right mentioned by Professor Moore. In deciding who has this substantive right, this Court sees no reason to depart from the criteria which would control were Rule 17(a) specifically to deal with use plaintiffs.

3. It seems equally clear that the assignee also has an enforceable substantive right under Maine law. Rosenberg v. Cohen,

case the issue involved was whether or not a mortgagee, who had assigned the mortgage to a bank as collateral security for his own loan, could foreclose the mortgage and maintain a writ of entry in his own name. The Court summarized the Maine law as follows (127 Me. at page 263, 143 A. 98):

"It would appear, then, that a mortgagee who has assigned his mortgage and the note secured thereby to a third party as collateral, may maintain foreclosure proceedings and a writ of entry in his own name, provided that such proceedings are brought with the consent of his assignee, and *that, even without such consent he may proceed in his own name if the pledged security is larger in amount than the note for which it is given as collateral, he then being clearly a party in interest * * *."* (Emphasis supplied.)

In Simansky, this rule was reaffirmed and applied to permit recovery in a suit upon a promissory note brought in his own name by an indorsee, who had pledged and indorsed the note over to the bank as collateral security for a smaller note given by him to the bank. The record disclosed that the action had been brought with the knowledge and consent of the bank.

▮ The application of the foregoing doctrine to the facts disclosed in the instant case compels the conclusion that the use plaintiff has an enforceable right under Maine law and is therefore a real party in interest within the meaning of Rule 17(a) for the purposes of this action. The assignment shows on its face that it was executed for collateral security only, the Bank acquiring no

interest in the proceeds of the assigned contract except as security for its loans to the use plaintiff. The amount claimed by the use plaintiff in the present action is $159,680.70, which is approximately five times the amount claimed by the Bank in its companion action as the balance of the loans owed to it by the use plaintiff.[4] There is further abundant evidence in this record to show that the Bank has knowledge of and consents to the maintenance of this suit for the benefit of the use plaintiff in its own name.

It is accordingly the conclusion of this Court that the use plaintiff is a proper party plaintiff under Rule 17(a) and that the first ground assigned by the defendants in support of their motion for summary judgment upon the complaint is without merit.

## II.

The defendants next argue in support of their motion for summary judgment upon the complaint that the use plaintiff is barred from bringing the instant action by Rule 13(a) of the Federal Rules of Civil Procedure because of the failure of the use plaintiff to assert its present claim as a counterclaim to the claim for breach of the same contract which was filed by Verrier in the recent bankruptcy proceedings. Rule 13(a) provides:

"*Rule 13. Counterclaim and Cross-Claim*

"(a) *Compulsory Counterclaims.* A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication

---

supra 127 Me. at pages 261, 262, 143 A. 97. The assignee also has standing to sue under the Miller Act. United States for Benefit and on Behalf of Sherman v. Carter, 1956, 353 U.S. 210, 77 S.Ct. 793, 1 L.Ed.2d 776. For the protection of the debtor, upon motion under Rule 19(b), the assignee may be joined as a party plaintiff with the assignor. Cf.

United States v. Conn, D.C.E.D.S.C.1956, 19 F.R.D. 274. The defendants here, however, would appear to be fully protected against a double recovery by the consolidation for trial of the instant action with the Bank's companion suit to enforce its security interest in the contract. See note 1, supra.

4. See note 1, supra.

the presence of third parties of whom the court cannot acquire jurisdiction, except that such a claim need not be so stated if at the time the action was commenced the claim was the subject of another pending action."

The Bankruptcy Court records reveal that the use plaintiff was adjudicated an involuntary bankrupt on February 5, 1957 on petition of three creditors who had furnished materials to the bankrupt in connection with its performance of the Verrier contract.[5] Included in the bankruptcy schedules filed by the bankrupt on February 27, 1957 was a claim against Verrier in the amount of $150,-000. The bankruptcy records also show that on March 15, 1957 Verrier filed a proof of claim against the bankrupt estate in the amount of $162,550 for breach of the present contract. This claim was allowed in full by the Referee by endorsement on the proof of claim. Neither the date of the allowance, nor whether notice and hearing were had thereon, appear from the records. The Court assumes, however, that in accordance with the usual practice of the Bankruptcy Court Verrier's claim was allowed, along with the other claims against the estate, at the final meeting of creditors on March 20, 1958.

In the meantime, on February 11, 1958, upon petition of the trustee, the Referee authorized the trustee to abandon the bankrupt's claim against Verrier. This order was entered, without notice or hearing, on the day after the trustee's petition was filed. The bankruptcy proceedings were formally closed on June 6, 1958. The bankrupt did not obtain a discharge of any of its debts. It did apply for a discharge on June 3, 1958, but its application was disallowed by the Referee because unseasonably filed. See 1 Collier on Bankruptcy para. 14.05 (14th ed. 1956). The final report of the trustee shows total receipts of $796.00, and the Referee's report shows

that all of this was expended for administration, with no distribution to creditors. The latter report also reveals that the claims against the estate allowed by the Referee were in the total amount of $250,702.08. It is further apparent from the record that there was no active representation of the bankrupt by counsel until shortly before the proceedings were finally closed. In summary, an examination of the bankruptcy records indicates that the proceedings were handled in the summary fashion which unfortunately seems to be unavoidable and customary in a "no asset" case.

A mere reading of the foregoing record indicates the injustice which would result to the use plaintiff in this action if the defendants' present contention were to be accepted by this Court. Nor does the law require such a result.

■ There can be little doubt that if the prior proceedings had been of an ordinary civil nature, rather than in bankruptcy, Rule 13(a) would bar the plaintiff's claim, for it clearly arises out of the same "transaction or occurrence" as Verrier's prior claim in bankruptcy. However, the Federal Rules of Civil Procedure apply to proceedings in bankruptcy only insofar as they are not inconsistent with the Bankruptcy Act. General Order in Bankruptcy 37, 11 U.S.C.A. following Section 53. Thus, while as a general rule the Rules are to be followed in bankruptcy proceedings, they are not to be applied where there is a conflict between the Rules and the Act. It seems to this Court that this case presents such a conflict. Cf. In re Majestic Radio and Television Corp., 7 Cir., 1955, 227 F.2d 152, 157, certiorari denied Dwyer v. Franklin, 1956, 350 U.S. 995, 76 S.Ct. 545, 100 L.Ed. 860.

■ It is settled law that a trustee in bankruptcy may counterclaim in a bankruptcy proceeding. See, e. g., In re Farrell Publishing Corp., D.C.S.D.N.Y.1955, 130 F.Supp. 449; cf. In re Majestic Radio and Television Corp., supra. And

---

5. Counsel for the petitioning creditors also appeared as counsel for Verrier in the bankruptcy proceedings and are counsel for the defendants in the present action.

there *may* be sound reason, consistent with the Bankruptcy Act, for the application of Rule 13(a) to bar a subsequent suit by a trustee in bankruptcy upon a claim, within the scope of the Rule, which the trustee has failed to assert as a counterclaim against a claiming creditor in the bankruptcy proceedings. It does not follow, however, that the bankrupt himself should be similarly barred from suing upon a claim which, as in the instant proceedings, was abandoned by the trustee.

 Under the Act the effect of the abandonment of a right of action by the trustee is to revest title thereto in the bankrupt personally. See 4 Collier on Bankruptcy, paras. 70.28 and 70.42 (14th ed. 1942). This Court searches in vain to find in the Bankruptcy Act a grant of jurisdiction to the bankruptcy court to hear and determine the bankrupt's then personal claim against the creditor after its abandonment by the trustee. The bankruptcy court has only the jurisdiction given it in the statute. See Wheeling Structural Steel Co. v. Morse, 4 Cir., 1932, 62 F.2d 37. Indeed, the bankruptcy court after the adjudication in bankruptcy[6] has no interest in the prosecution of a claim recovery on which will in no way redound to the benefit of the estate. Thus the bankrupt, unlike the trustee, cannot assert a personal claim as a counterclaim in the bankruptcy proceedings after his adjudication.

The application of Rule 13(a) to bar suit by the bankrupt upon a claim abandoned by the trustee would thus mean that the abandonment would operate as a nullification of the claim, instead of causing a reversion to the bankrupt, in all cases in which the claim involved was a right of action against a claiming creditor. Such an application of Rule 13(a) would be wholly inconsistent with the concept of revestment of title in the bankrupt following the abandonment by the trustee of claims which are considered burdensome to the estate. See 4 Collier on Bankruptcy para. 70.42. It would result in an unwarranted penalty upon the bankrupt by abrogating his claim for no reason. General Order 37 neither requires nor permits such an untoward result.[7]

 The Court thus concludes that Rule 13(a) does not bar the plaintiff from bringing this action.

### III.

The ground asserted by the defendants in support of their motion for summary judgment upon their counterclaim is similarly without merit. In substance, the defendants' argument is that the allowance of Verrier's claim by the Bankruptcy Court constituted a valid judgment which cannot be challenged in this proceeding. In support of this position, the defendants rely upon a number of general statements to the effect that the allowance or disallowance of a claim in bankruptcy is res judicata in a subsequent proceeding between the same parties or their privies. See, e. g., 3 Collier on Bankruptcy para. 57.14 (14th ed. 1956).

 It is true that the orders of the bankruptcy court are judicial acts and should be given the same effect as the judicial acts of any other court. Lesser v. Gray, 1915, 236 U.S. 70, 35 S.Ct. 227, 59 L.Ed. 471; United States v. Coast Wineries, 9 Cir., 1942, 131 F.2d 643. Thus, on familiar principles, the allowance or disallowance of a claim by the bankruptcy court is res judicata as between the creditor and the *trustee* in the bankruptcy proceedings themselves and in subsequent proceedings with respect

6. Prior to adjudication the bankrupt in an involuntary proceeding may of course counterclaim in order to defeat his adjudication. Harris v. Capehart-Farnsworth Corp., 8 Cir., 1955, 225 F.2d 268.

7. The fact that the bankrupt might have obtained a discharge does not affect this analysis. Compare Cumberland Glass Mfg. Co. v. DeWitt, 1915, 237 U.S. 447, 35 S.Ct. 636, 59 L.Ed. 1042 with In re Empire Flooring, D.C.W.D.Pa.1930, 43 F. 2d 748.

to the bankrupt estate. In re Holzapfel's Sons, Inc., 7 Cir., 1957, 249 F.2d 861; Lewith v. Irving Trust Co., 2 Cir., 1933, 67 F.2d 855. It is equally clear that either a creditor or a bankrupt who has actively participated in a contest of a claim which was allowed or disallowed by the bankruptcy court is estopped to relitigate the issue of liability. United States v. Coast Wineries, supra; Larcon Company v. Wallingsford, D.C.W.D.Ark. 1955, 136 F.Supp. 602, affirmed, 8 Cir., 1956, 237 F.2d 904. But the foregoing does not support the defendants' contention in the present case that the mere allowance of an uncontested claim by the bankruptcy court is res judicata or estops the former bankrupt from defending a subsequent suit by the creditor.[8]

█ The error in the defendants' position here is disclosed by analysis of the nature of the jurisdiction of the bankruptcy court in allowing or disallowing claims against the estate. The jurisdictional grant is contained in Section 2, sub. a(2) of the Bankruptcy Act, 11 U.S.C.A. § 11, sub. a(2), which confers upon the bankruptcy court the power to "Allow claims, disallow claims, reconsider allowed or disallowed claims, and allow or disallow them *against bankrupt estates*." (Emphasis supplied.) Jurisdiction is thus limited by the Act to the estate in bankruptcy and embraces no more. Indeed, the Supreme Court has emphasized that "the filing of a claim in bankruptcy is not the institution of a plenary suit. It is a claim against assets in the hands of the bankruptcy court, not an action *in personam*." Meyer v. Fleming, 1946, 327 U.S. 161, 170, 66 S.Ct. 382, 387, 90 L.Ed. 595. See also Gardner v. New Jersey, 1947, 329 U.S. 565, 574, 67 S.Ct. 467, 91 L.Ed. 504; cf. Gratiot County State Bank v.

Johnson, 1919, 249 U.S. 246, 39 S.Ct. 263, 63 L.Ed. 587 (adjudication in bankruptcy a judgment in rem).

█ It has been recognized in a number of cases that the allowance of a claim by the bankruptcy court does not result in a personal judgment against the bankrupt, but is, in effect, only a judgment for the purposes of the bankruptcy liquidation and is limited in its operation to the bankrupt estate. Thus, as far back as 1927, in the case of Massee & Felton Lumber Co. v. Benenson, D.C. S.D.N.Y.1927, 23 F.2d 107, the court was concerned with the effect of the allowance by a bankruptcy court of a claim against the estate of a bankrupt principal, which had not been contested by the bankrupt, in a subsequent suit by the creditor against the surety. The Court expressly recognized that it was bound by a Supreme Court decision holding that a judgment against a principal was prima facie evidence against the surety. It held, however, that the allowance of the claim was not such a judgment, saying (23 F.2d at pages 108–109):

"A claim filed against an estate in bankruptcy is in no sense a claim in personam against the bankrupt. It is in the nature of a petition to share in a fund held by the court for distribution. The allowance of the claim is a determination of the right to share in that fund for the amount allowed, but it is in no sense a determination that the bankrupt is personally liable for that amount. It may well be that, if the bankrupt or a creditor participates in a contest of the claim, the findings of the court basic to the allowance will be findings of fact binding thereafter as between the contesting parties. But if the bankrupt in no manner

8. The general statement at 3 Collier on Bankruptcy para. 57.14 may not be intended to apply to the narrow issue presented in the instant case. See 3 Collier on Bankruptcy para. 57.14 n. 31. At least, as the author himself recognizes in some instances, the actual holdings of the cases cited in support of the statement do not reach this issue. In all but

one of the few cases which involved subsequent actions against the bankrupt personally, the allowance of the claim by the bankruptcy court was actively contested. In that one, Blanks v. West Point Wholesale Grocery Co., 1932, 225 Ala. 74, 142 So. 49, it does not affirmatively appear whether or not the claim was contested.

participates in the proceedings de-spite a right so to do, if as in this case the allowance is made solely by the action of the trustee, its effect should be limited to proceedings thereafter brought by or against the trustee. For or against him such allowance or disallowance has been held to be res adjudicata."

Again, in the case of In re McChesney, D.C.S.D.Cal.1931, 58 F.2d 340, the court held that the allowance by the referee of a tax claim against a bankrupt estate was not such a judgment as would toll the running of the statute of limitations on the underlying tax claim against the bankrupt personally. The Court stated (58 F.2d at pages 340–341):

"While the allowance of a claim is in effect a judgment, it is only such for the purpose of the Bankruptcy Act (11 U.S.C.A.), and to the extent of the assets belonging to bankrupt-cy [sic] estate in which it is filed."

In the very recent case of Walley v. United States, 9 Cir., 1958, 259 F.2d 579, the court was presented with the same issue as that involved in McChesney. In holding that the statute of limitations was not suspended, the court noted (259 F.2d at page 581):

"We think the wording of the statute is clear and confines the op-eration of the allowance of a claim to the bankrupt estate in existence at the time of the institution of the bankruptcy proceedings."

See also Goldstein v. Pearson, D.C.Mun. App.1956, 121 A.2d 260; 3 Collier on Bankruptcy para. 57.14 n. 31.

Although the foregoing cases are concerned with problems other than the res judicata effect of the uncontested allowance of a claim by the bankruptcy court, the reasoning of the courts and the principles upon which their holdings are founded are directly in point. The limited effect which they give to the un-contested allowance of a claim in bank-ruptcy is also in accord with the princi-ple stated in the Restatement of Judg-ments § 73, Comment c (1942) as to the scope of a judgment in rem:

"Although a valid judgment in rem is binding on all the world as to interests in the thing which is the subject of the action, it is not conclusive as to a fact upon which the judgment is based in any sub-sequent action not involving inter-ests in the thing, except as to per-sons who have appeared and actually litigated the question of the exist-ence of the fact."

The importance of these considera-tions has been recognized in an excellent discussion of the problem in Mussman and Riesenfeld, Jurisdiction in Bank-ruptcy, 13 Law & Contemp.Prob. 88, 92–3 (1948), in which the authors state:

"Special consideration must be given to the nature of the jurisdic-tion of the court in allowing or dis-allowing claims against the estate. The Supreme Court has recently emphasized that such adjudications are not of actions in personam but of claims against assets only.[9] This position can conceivably have im-portant consequences with respect to the res judicata effects of such al-lowance or disallowance. Adjudica-tions of "claims with respect to assets" are commonly called quasi in rem and have not the usual effect of giving rise to an action in debt or estoppel by verdict. For straight bankruptcy proceedings, it could consequently be argued with plausi-bility that the allowance or disallow-ance of a claim by the referee for the reason that he considers it as proved or not proved is not res judicata in a later suit by the credi-tor against the bankrupt. * * * As between the trustee and the creditor the issues which determine the al-lowance or disallowance should be res judicata, e. g., the preferential character of a transfer."

9. (court footnote.) The authors here cite Meyer v. Fleming, supra, and Gardner v. New Jersey, supra. Further footnotes by the authors are omitted.

This analysis is in harmony both with the purposes of the Bankruptcy Act and with the realities of bankruptcy administration. Unless there is an objection to a claim, the bankruptcy court may, and usually will, summarily allow it. See MacLaughlin, Bankruptcy 124 (1956); cf. Bankruptcy Act, § 57, sub. d, 11 U.S.C.A. § 93, sub. d. In a "no asset" case, as a rule no one is going to bother to make objection. Insofar as the bankrupt himself is concerned, it is true that section 7, sub. a(3) and (7) of the Act, 11 U.S.C.A. § 25, sub. a(3) and (7), imposes upon him the duty to report to the trustee concerning the correctness of all proofs of claim filed. But he does not have the *right* to object to the allowance of claims except in certain exceptional cases not here pertinent. See 3 Collier on Bankruptcy para. 57.17, at 218–9. In fact, since the bankrupt is insolvent, he is considered to have no interest in the distribution of the assets among his creditors. See 3 Collier on Bankruptcy para. 57.17, at 218. There is certainly nothing in the Act to alert him to the possibility that the proceedings will result in a personal judgment against him which will reach assets other than those included in the bankrupt estate. As well said in the Walley case (259 F.2d at page 582):

"* * * The bankrupt is on notice that his existing assets are in the estate in bankruptcy and are being subjected to payment of claims filed therein, *and it is not within the contemplation of the act that he will thereby be informed that future assets he may acquire will be subjected to the payment of nondischargeable claims proved in the bankruptcy proceeding.*" (Emphasis supplied.)

See also Mussman and Riesenfeld, supra at 93.

It is thus the conclusion of this Court that the allowance of the Verrier claim by the Bankruptcy Court in the instant proceedings only operated against the assets comprising the bankruptcy estate. Consequently, the defendants cannot rely upon the allowance of the claim as a conclusive adjudication of its validity in the present action.

The defendants' motion for summary judgment upon the complaint and the defendants' motion for summary judgment upon the counterclaim are denied.